**FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT**
**UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983**

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
*Hot Springs* DIVISION

┌─────────────────────────┐
│ **FILED**               │
│ US DISTRICT COURT       │
│ WESTERN DISTRICT        │
│ OF ARKANSAS             │
│ Nov 13, 2020            │
│ OFFICE OF THE CLERK     │
└─────────────────────────┘

*Alvin Wesley King*
(Enter above the full name of the Plaintiff
in this action.)

Prisoner ID No. *#659717*
(Do Not Put Your Social Security Number)

6:20-cv-06132

V.                                CASE NO. _____

*Arkansas Department of Corrections*
*Arkansas Dept. of Corrections' Division of Community Corrections*
*Lt. Angelah Kennedy  SEE ATTACHED*
(Enter above the **full** name of the Defendant,
or Defendants, in this action.)

I.    **Previous Lawsuits**

A.    Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action?

Yes _____        No ___✓___

B.    If your answer to A is yes, describe each lawsuit in the space below including the **exact** **Plaintiff name or alias used**.  (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

1.    Parties to previous lawsuit

Plaintiffs: _____

Defendants: _____

_____

2.    Court (if federal court, name the district; if state, name the county):

_____

3.    Docket number: _____

4.    Name of judge to whom case was assigned: _____

5.    Disposition (for example:  Was the case dismissed?  Was it appealed? Is it still pending?) _____

6.    Approximate date of filing lawsuit: _____

7.    Approximate date of disposition: _____

(Revised 04/2015)

Defendants continued from p. 1
Andrew Ruh, Walter White, Carol Robertson, Beverley Brown, Lt. Perkins, Warden Emsweller, Eddie Banks, Lynda Rayburn, Sgt. Baker, Allan Stricklin, D.W. Culclager, Ms. Hossman

**II.**   Place of Present Confinement: *Omega Technical Parole Violators Unit 104 Walco Ln. Malvern, AR 72104*

**III.**  There is a written prisoner grievance procedure in the Arkansas Department of Correction and in your county jail. Failure to complete the grievance procedure may affect your case in federal court.

    **A.**  Did you present the facts relating to your complaint in the state or county written prisoner grievance procedure?

        Yes ✔ *SEEC.*      No _____

    **B.**  If your answer is YES, attach copies of the most recent written grievance(s)/response(s) relating to your claims showing completion of the grievance procedure. **FAILURE TO ATTACH THE REQUIRED COPIES MAY RESULT IN THE DISMISSAL OF YOUR COMPLAINT.** If copies are not available, list the number assigned to the grievance(s) and the approximate date it was presented.

    **C.**  If your answer is NO, explain why not: *I've exhausted my efforts to exhaust the grievance procedure, but the untimley manner in which complaint forms and grievance forms are addressed at this unit SEE ATTACHED*

**IV.**  Parties

(In item A below, place your name in the first blank and place your present address in the second blank.)

    **A.**  Your Full Name: *Alvin Wesley King (Home)  Alvin Wesley King #657917(present)*

        Address: *4313 Coronet St.   104 Walco Ln. ORCU P.O. Box 1630*
        *Crossett, AR 71635   Malvern, AR 72104*

(In Item B below, place the full name of the Defendant in the first blank, his official position in the second blank, his place of employment in the third blank, and his address in the fourth blank.)

Do Not List Witnesses.

You may not name the jail as a Defendant. The jail is a building and cannot be sued.

**B. Read carefully and fill out all information sought.**

    1. Defendant #1

    Full Name: *Lt. Angelah Kennedy*

    Position: *Correctional Officer, Rank Lt.*

    Place of Employment: *Omega Technical Parole Violators Unit*

    Address: *104 Walco Ln. Malvern, AR 72104*

If you or I were to file a grievance that in any way coincides with a disciplinary of the disciplinary process they will reject it and proclaim it not grievable. They claim that the appeal process is implemented to eliminate any grievances against disciplinary matters. My mailing Address has changed from Omega Unit, 104 Walco Ln. Malvern AR 72104 to Ouachita River Correctional Unit P.O. Box 1630 Malvern, AR 72104. 104 Walco Ln is the physical address of Ouachita River Correctional Unit and next door to Omega but for whatever reason or reasons ORCU changed their mailing address was waiting for transfer next door before getting a disciplinary.    Wes King

I was transferred from Omega over to OPCU on 9-8-20.
Warden Ensweiler and ARO Allen Strickling left their
jobs at Omega Unit during or in the month of August.
I beleive they left their jobs because of legal actions that
they new were eminent and forthcoming in the very near future on behalf
of myself and other inmates, and this is the only statement
that I have given or will give that I feel may be
or could be speculation or circumstantial and not concret
fact. SOD (Staff on duty) liatenants Baker and Satterwhite
were put in the office of ARO until they could get
someone trained or hired to do the job. They began
addressing some of the conflict but they started with most
previous complaints first. I haven't and most likely won't
see or hear anything else of complaints and grievances that will fall

III. Grievance Procedure *Continued from p. 2*

C. makes them useless forms of resolve to conflict. Getting an interveiw with the ARO (Aministrative Reveiw officer) Allan Stricklin who handles and addresses complaints and grievances for me has been impossible. He still has complaint forms and grievance forms that I filed as far back as the first part of July. I can't provide copies, dates, or numbers because he hasn't addressed and still has the forms. I am presenting a complaint for violation of due process as a result of his neglect.

Alvin King #659717
8-20-20

Still putting in request forms, complaint forms, grievance forms. Still have heard nothing about forms filed as far back as first part of July. Still having problems getting help from office of ARO and Law Library.

Alvin King #659717
8-30-20

If I were to file a grievance that in any way coincide with a displinary or the displinary process, they will reject it and claim it non-grievable.

2. **Defendant #2**

Full Name: *Andrew Ruh*

Position: *Major (Cheif Security Officer)*

Place of Employment: *Omega Technical Parole Violators Unit*

Address: *104 Walco Lane*

*Malvern, AR 72104*

3. **Defendant #3**

Full Name: *Walter White*

Position: *Assistant Warden, Deputy Warden*

Place of Employment: *Omega Technical Parole Violators Unit*

Address: *104 Walco Lane*

*Malvern, AR 72104*

4. **Defendant #4**

Full Name: *Carol Robertson*

Position: *Treatment Supervisor*

Place of Employment: *Omega Technical Parole Violators Unit*

Address: *104 Walco Lane*

*Malvern, AR 72104*

5. **Defendant #5**

Full Name: *Beverley Brown*

Position: *Administrative Specialist (telephone)*

Place of Employment: *Omega Technical Parole Violators Unit*

Address: *104 Walco Lane*

*Malvern, AR 72104*

6. **Defendant #6**

Full Name: *Mr. Perkins*

Position: *Security Officer, Rank Lt.*

Place of Employment: *Omega Technical Violators Unit*
*Lt. Perkins signature is on bottom in center of Hearing Summary Report between p. 7 and its Attachment (SRS Signature)*

Defendants continued from p.3

7. Defendant #7
Full Name: Mr. Emsweller
Position: Warden
Place of Employment: Omega Technical Violators Unit
Address: 104 Walco Lane
          Malvern, AR 72104
Mr. Emsweller affirmed the findings and sanctions
of The Displinary Hearing Committee in his level, the
first level of the Displinary Appeals Process.

8. Defendant #8
Full name: Eddie Banks
Position: Deputy Director of Residential Services
Place of Employment: Arkansas Dept. of Corections' Division of Communi
Corrections
Address: 105 N. Capitol Ave.
          Little Rock, AR 72201

9. Defendant #9
Full Name: Lynda Rayburn
Position: Treatment Coordinator
Place of Employment: Omega Technical Parole Violators Unit
Address: 104 Walco Lane
          Malvern, AR 72104

Defendants continued from p. 3

10. Defendant #10
Full Name: Sgt. Baker
Position: Security Officer Rank: Sgt.
Place of Employment: Omega Technical Parole Violators Unit
Address: 104 Walco Lane
        Malvern, AR 72104

11. Defendant #11
Full Name: Allan Stricklin
Position: ARO Administrative Review Officer
Place of Employment: Omega Technical Parole Violators Unit
Address: 104 Walco Lane
        Malvern, AR 72104

12. Defendant #12
Full Name: D.W. Culelager
Position: Deputy Warden
Place of Employment: Ouachita River Correctional Unit
Address: 104 Walco Lane, Physical Address (next door to Omega
        Malvern, AR 72104

13. Defendant #13
Full Name:
Position: Classification Manager
Place of Employment: Ouachita River Correctional Unit
Address: 104 Walco Lane
        Malvern AR 72104

Defendents continued from p. 3

14. Defendant #14
Full Name: Arkansas Department of Corrections
Position: Government Entity
Place of Employment = Central Office
Address: P.O. 8707
          Pine Bluff, AR


15. Defendant #15
Full Name: Arkansas Dept of Corrections' Division of Community Corr.
          or Arkansas Community Corrections
Position: Government Entity
Place of Employment:
Address: 105 Capitol Ave.
         Little Rock, AR. 72201


Arkansas Department of Community Corrections
(Board of Corrections)
Two Union National Plaza
2nd Floor
105 W. Capitol
Little Rock, AR 72201

**OMEGA LIST FOR REQUEST FOR INTERVIEW**
Request for Interview should be directed as follows: *Lt. Angela Kennedy*

| AREA OF AUTHORITY | | STAFF MEMBER |
|---|---|---|
| **Warden** | *A newer more recent* | Mr. Emsweller |
| **Deputy Warden** | *list of staff members* | Mr. White *Walter White* |
| **Chief of Security** | *names can be found* | Major Ruh *Andrew Ruh* |
| **Treatment Supervisor** | *at the bottom of p.7 and* | Ms. Robertson *Carol Robertson* |
| **Administrative Specialist (Telephone)** | *top of p.8 in the* | Ms. B. Brown *Beverley Brown* |
| **Administrative Specialist (Driver's License/ID)** | *Arkansas Department of Corrections' Division* | Ms. Froman |
| **ARO (Grievances, Law Library)** *Disciplinarys and Appeals* | *of Community* | Mr. Stricklin *Allan Stricklin* |
| **IPO (Transportation)** | *Corrections Omega* | Ms. Hrdlicka |
| **Staff on Duty (Jobs/Community)** | *Resident Hanbook* | Lt. Satterwhite/ Lt. Baker |
| **Records Supervisor** | *for the Technical* | Ms. Owens |
| **Issuance/Supply/Laundry** | *Violator Program* | Cpl. Hush/ Cpl. Wood |
| **Fiscal Support Specialist (Indigent/Resident Accounts)** | *that accompanys* | Ms. Woods |
| **Mail / Visitation** | *this Complaint.* | Ms. Hilliard |
| **Medical** | | Vacant |
| **Chaplain** | *#65971-20 10-28-20* | Dr. Mead |
| **Intake Officer** | | Cpl. Webb |
| **Food Preparation Manager** | | Ms. Morgan |
| **Commissary Supervisor** | | Ms. Stricklin |

*I aquired this sheet of paper from Inmate Goodman in my* **APPROVED** *search for information about Defendants in my lawsuit. Correctional Officers are trained not to give personal information about themselves or their fellow coworker. Goodman came here as a resident of the Supervised Sanction Program and he stated that this sheet of paper came from a Supervised Sanction Program Resident handbook. The Technical Violator Program and The Supervised Sanction Program are different programs. Goodman was moved over from the Supervised Sanction Program to the Technical Violator Program because of his behavior.*

*#65971-20 8-22-20*

Address: _104 Walco Lane_
_Malvern AR, 72104_

V.    At the time of the alleged incident(s), were you:
(check the appropriate blank)

_____ in jail and still awaiting trial on pending criminal charges
✓ serving a sentence as a result of a judgment of conviction
✓ in jail for other reasons (*e.g.,* alleged probation violation, etc.)

Explain: _I signed for 90 day parole violation sanction on 4-21-20 and was_
_transferred here to The Omega Unit on 5-21-20. A new 40 month sentence_
_was finalized on 6-23-20 here at this unit via Zoom._

Please provide the date of your conviction or probation or parole revocation:

_4-21-20 parole violation sanction, 6-23-20 two new charges and revocation_

VI.    **Statement of Claim**

State **every** ground on which you claim that one or more of the Defendants violated your federal constitutional rights. For example, if you have an excessive force claim and a denial of medical care claim, you must fill out a separate section for each different claim. This section should be limited to the **facts** of your claim.

With respect to **each** claim, briefly describe the actions taken by each Defendant who you believe was involved in violating your rights. Include also the names of other persons involved, dates and places. Do not give any legal arguments or cite any cases or statutes. (Use as much space as you need. Attach extra sheets if necessary.)

**Claim Number # 1:**

Type of Claim (for example: excessive force, denial of medical care, etc.):

_Discrimination_

Date of the Occurrence: _7-3-20_

Name of each Defendant involved: _Lt. Angelah Kennedy, CSO Major Andrew_
_Ruh, Assistant Warden Walter White, Treatment Supervisor Carol_
_Robertson_

(A) With respect to Defendant (Name) _Lt. Angelah Kennedy_, describe the acts or omissions of **this** Defendant that form the basis for claim #1 and any harm caused by it.

_Lt. Angelah Kennedy wrote me a major diciplinary on 7-3-20 for not returning_
_to work in the kitchen. I put in the required notice of quitting at approx. 12:00_
_p.m. on 7-2-20. 7 other inmates in my barracks alone quit their A.M._
_SEE ATTACHED_

-4-

**Arkansas Community Correction**
**CARDINAL RULE VIOLATION REPORT & NOTICE TO ACCUSED RESIDENT**

**PART 1**
**Instructions:** Complete both sides of this form. Please submit completed forms promptly to the Shift Supervisor. The Inquiry Officer or ARO will provide a copy of **SIDE A** to the accused and SOD.

| King, Alvin | 659717 | 7/3/20 | 4:10 | A shift office |
|---|---|---|---|---|
| Accused Resident's Name (Print) | Resident's Number | Incident Date | Time ☒ **AM** ☐ **PM** | **Location** |
| **Description of Alleged Incident** Continuation Sheets Attached: | | | pages, or ☐ **NONE** | |

Resident King, A #659717 refused to go work in the kitchen.

**Alleged Cardinal Rule(s) Violated** (Violation Code Number & Description):

CR 12 Residents must not refuse to follow orders by staff.

**Remarks** (ARO: Document any limitations on witnesses and the reason):

●

**Certification:** I certify that the above description of the incident is true and accurate to the best of my knowledge and belief.

| A. Kennedy | 7/3/20 | |
|---|---|---|
| Reporting Employee Name (Print) | Date of Report | Reporting Employee Signature |

**PART 2**     **NOTICE OF RULE VIOLATION**

**STAFF MEMBER READ TO ACCUSED:**
This is notice that you are accused of the rule violation described above. You are ordered not to attempt to influence anyone to make untrue or misleading statements on your behalf, or to speak to anyone concerning this incident other than your counselor, hearing assistant (if assigned), inquiry officer, or others acting in an official capacity, concerning this incident. If you want the Disciplinary Hearing Committee to hear from any witnesses on your behalf, you must list those witnesses in the space below at this time. The appointed staff inquiry officer will obtain statements from all witnesses. You are not to discuss this incident with witnesses or attempt to obtain statements from them. Your hearing on this matter is scheduled for:

2:30 ☐ **AM** ☒ **PM**   on (Day/Date): 7/9/2020   at (location): Omega

**Note to Staff Member:**    Also have the resident complete **Form 2, "Explanation of the Disciplinary Process."**
If the resident indicates a desire to waive his/her right to attend the hearing, complete **Form 3, "Hearing Appearance Waiver and Plea."**

☑ I agree to waive the 24 hour advance notice for a hearing and accept the date and time indicated.

_(signature)_
Resident's Signature

List the names of your witnesses. Witnesses must be identified at the time of this notification.

| _(signature)_ | _(signature)_ | 7/9/2020   12:12 PM |
|---|---|---|
| Signature of Resident | Signature of Notifying Officer | Date/Time of Notice |

Was a Hearing Assistant refused by resident?   ☐ **YES** ☑ **NO**   If yes, signature of Resident: _____

**CONTROL NUMBER:**    2020-07-005

Original: DHC Hearing Packet                                AD 18-01 Form 1 Side B

I have sent in two request forms, on complaining form and two grievance forms, one emergency about issuance items I did not receive during the three or four weeks I worked in the kitchen. One of the request forms was sent in the week before I started work to let them know I wouldn't be in barracks to receive the items plus talked to the officer who passes out issuance more than once in the hallway as he was passing them out. On this day July 10th 2020 I talked to the issuance officer because I quit my kitchen job which I received a cardinal violation for allowing me to be here when he came by with issuance items. I asked the officer why hadn't I heard something from all the paperwork I have filed about this the past 4 weeks. He claim to have not seen or heard any requests complaints or greivances which I do not beleive. Somebody has seen this paperwork I have filed.

## Arkansas Community Correction
## HEARING SUMMARY REPORT

### This form is used by the ARO to document action taken by the Disciplinary Hearing Committee (DHC).

**Instructions**: Attach the Rule Violation Report before forwarding to the Records Section for input into eOMIS and filing. A copy with supporting documentation (e.g., witness statements) shall be maintained from the hearing date for any subsequent official access (e.g., attorney/client request for review). Ensure that the control number for this action is placed at the bottom and that it agrees with supporting documents. Provide a copy of this form to the SOD.

| King, Alvin | 659717 | 7/9/2020 | Omega Hearing Room |
|---|---|---|---|
| Resident's Name (Print) | Offender No. | Hearing Date | Hearing Location |

| 2020-07-005 | 0:00 | 10 : 27 | 2 :59  ☐ AM ☒ PM | 3 :11  ☐ AM ☒ PM |
|---|---|---|---|---|
| Tape Number | Beginning Meter Reading | Ending Meter Reading | Beginning Time | Ending Time |

Hearing Assistant was:
☐ Not Designated
Hearing Assistant's Name (Print) If Designated    ☒ Refused by Resident

### CARDINAL RULES THAT RESIDENT IS ACCUSED OF VIOLATING

| CR 12 | Residents must not refuse to follow orders by staff. | ☐ Guilty ☒ Not Guilty ☐ No Plea | ☒ Guilty ☐ Not Guilty |
|---|---|---|---|
| Rule No. | Short Title of Cardinal Rule Violated | Resident Pleads | DHC Finding |

| | | ☐ Guilty ☐ Not Guilty ☐ No Plea | ☐ Guilty ☐ Not Guilty |
|---|---|---|---|
| Rule No. | Short Title of Cardinal Rule Violated | Resident Pleads | DHC Finding |

| | | ☐ Guilty ☐ Not Guilty ☐ No Plea | ☐ Guilty ☐ Not Guilty |
|---|---|---|---|
| Rule No. | Short Title of Cardinal Rule Violated | Resident Pleads | DHC Finding |

| | | ☐ Guilty ☐ Not Guilty ☐ No Plea | ☐ Guilty ☐ Not Guilty |
|---|---|---|---|
| Rule No. | Short Title of Cardinal Rule Violated | Resident Pleads | DHC Finding |

Summary of Evidence relied upon to make a decision:  Testimony entered tody and Statements in incident packet.

**SANCTIONS:**

| | | | |
|---|---|---|---|
| ☒ Recommend Transfer to ADC | ☒ Suspended  30  Days | ☐ Extra Duty  Days | |
| ☐ Loss of  Days Good Time | ☐ Suspended  Days | ☐ Pay Restitution of $ | |
| ☒ Reduce to Class  IV | ☒ Suspended  30  Days | ☐ Loss of Job Privileges | |
| ☒ Disciplinary Detention  30  Days | ☒ Suspended  30  Days | ☒ Loss of Commissary Privileges  20  Days | |
| | | ☒ Loss of Telephone Privileges  20  Days | |
| ☐ Refer To Treatment for Further Intervention | | ☒ Loss of Visitation Privileges  20  Days | |

DHC Chairperson Signature

Alvin King
Resident Signature (for Receipt of a Copy)

Major A. Rd
Security Representative Signature

Treatment Supervisor Signature

ARO Chairperson Signature

CONTROL NUMBER:    2020-07-005

AD 14-13  Form 5

**ARKANSAS DEPARTMENT OF COMMUNITY CORRECTION**
**Disciplinary Appeal Form**

Resident_ Alvin King___ ACC#___ 659717_____ Date: _07/17/2020___

Disciplinary Appeal Number: _2020-07-005_____Lt. Angelah Kennedy

## RESPONSE FROM THE DEPUTY DIRECTOR OF RESIDENTIAL SERVICES:

Affirm: _ __X____    Reverse: _____    Modify: _____

In receipt of your appeal of the findings of the displinary action taken against you, I am upholding the sanctions and finidings imposed by the DHC based on the statements in the report.

_____          _7/30/20.2D_
Deputy Director, Residential Services          Date

**\*Note:  The decision of the Deputy Director is final.**

II. Statement of Claim    Continued from p. 4

(A) Kitchen jobs without notice and without receiving disciplinaries from Lt. Kennedy or any officer. They were Robbie Sivils, Eddie Coyd, Josh Gross, Brandon King, Billy Owens, Shane Nichols and Sean Spredlin.

As a result of the displinary, I received a suspended sentence which included a reccomendation for transfer to ADC, 30 days displinary detention, class reduction from II to IV, and a 20 day restriction from phone, homewave (videovisitation) and commissary was imposed that was not suspended.)

These discriminatory acts brought negative feelings of anger, agression, resentment, stress, and anxiety which fueled the Mania Bi-Polar, Severe Anxiety, Post Traumatic Stress Disorders I was diagnossed with by doctors and conselors at Delta Conseling Associates in Crossett, AR in 2016 and left me feeling trapped and violated.

Displinary matters are not grievable.

Alvin King #659717
8-20-20


There were several different reasons for me quitting my A.M. Kitchen job. The main and most important reason was because I learned that since I'm positive Hep. B, I was putting fellow inmates and ADC/DCC staff at risk to contract the virus in the event my blood somehow made it into someones food and also it was a mistake on the part of ADC/DCC staff clearing me for work in the kitchen. However, my basis for my discriminatio claim is 7 or 8 inmates in my barracks alone quit their kitchen jobs prior to me quitting mine and they did so without displinarys, sanctions, or restrictions.

Alvin King #659717
8-21-20

_____

_____

_____

_____

**Are you suing this Defendant in his or her: (check the appropriate blank)**

_____    official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)

_____    personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

✓    both official and personal capacity

**If you are asserting an official capacity claim, please describe the custom or policy that you believe caused the violation of your constitutional rights.**

I feel that an official capacity claim is suitable because the customs or policies set forth and handed down by the governmental entity failed and caused a violation of my constitutional rights and numbers 2,4,14,16, and 19 of Residents Bill of Rights on pages 4 and 5 of The Arkansas Dept of Corrections' Division of Community Corrections Omega Resident Handbook for the Technical Violator (later *SEE ATTACHED*

**(B)  With respect to Defendant (Name)** CSO Major Andrew Ruh_____, **describe the acts or omissions of this Defendant that form the basis for claim #1 and any harm caused by it.**

Andrew Ruh is the Major, Cheif Security Officer and a member of The Dispinary Hearing Committee. Major Ruh is one of three Dispinary Hearing Committee Members that as a whole voted for a guilty verdict at my hearing without checking to see what was being done to other residents who quit their kitchen jobs. As Cheif Security Officer, he should be policing the actions of his officers under him to *SEE ATTACHED*

**Are you suing this Defendant in his or her: (check the appropriate blank)**

_____    official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)

_____    personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

✓    both official and personal capacity

¶II (A) Official Capacity again Continued from p. 5

Program.

(B) ensure that all residents are treated equal and being held to the same consequences for their actions to prevent discrimination and the violation of their constitutional rights and the Bill of Rights in the Resident Handbook. The guilty verdict voted for by the Disciplinary Hearing Committee Members brought on me negative feelings of anger, aggression, resentment, stress and anxiety which fueled the Mania Bi-Polar, Severe Anxiety, and Post Traumatic Stress Disorders I was diagnosed with by doctors and conselors at Delta Censeling Associates in Crossett, AR in 2016 and left me feeling trapped and violated. These sort of actions are directley contridictory to the mission statement given on p. 4 of the Resident Handbook.

                                              Alvin King #659717
                                                   3-21-20

In regard to my complaints about DHC members, I spoke with a Sgt. Harrison on 8-29-20. He stated that he quit the Disciplinary Hearing Committee because of too many displinarys moving forward that he felt should have been dismissed and also because the severity of some sanctions being imposed he felt like was inadequate or to severe. As in my case for example, he said that the 515 imposed on me in my first displinary was to severe for disobeying an order to go back to work especially since (1) I was told by the kitchen manager Ms. Rodriguez to put in a notice to quit and quit if I wanted to which I did. (2) 7 other inmates in my barracks alone quit their A.M. kitchen jobs without notice and without receiving displinary and/or sanctions (3) I'm positive for Hepatitis B and never should have been cleared to work in any kitchen. He stated that he would've cast his vote for dismissal because of #3.

                                              Alvin King #659717
                                                   8-30-20

The following week on 9-3-20, I instigated another conversation with Sgt. Harrison that revealed more information about th actions of the DHC and more about his disapproval of those actions. Sgt. Harrison stated again that he quit sitting on the Displinary Hearing Committee because they were continuing

over to back

cases that should've been dismissed and using cruel and unusual punishment (unecessary degrees or levels of punishment for violations of minor or lesser infractions as in my case) An example he used was, A suspended or active sentence of Referral for transfer to ADC, 30 days displinary detention, and reduction of class from II to IV is one that is necessary for inmates who are fighting, a threat to staff, or commit acts of sexual assault etc. Sgt. Harrison stated that in his opinion disobeying a direct order that does not involve violence or the threat of violence to other inmates or staff or when the officer writing the cardinal has to manipulate their purpose for writing their report into disobeying a direct order doesn't constitute those types of sentences suspended or active. Furthermore he says, that these sentences are within the Allowable Range of Sanctions but not mandatory as stated on the top of page 14 of the Technical Violator Handbook and that restrictions from Homewave, phone and commissary were more suitable and even more restrictions for consecutive violations of no-violent nature.

Shawn King #259717
9-3-20

**If you are asserting an official capacity claim,** please describe the custom or policy that you believe caused the violation of your constitutional rights.

I feel that an official capacity claim is suitable because the customs or policies set forth and handed down by the governmental entity failed and caused a violation of my constitutional rights and numbers 2, 4, 14, 16 and 17 of the Residents Bill of Rights on pages 4 and 5 of The Arkansas Dept. of Corrections' Division of Community Corrections Omega Resident Handbook for the Technical Violator Program. Also, these actions are directley *SEE ATTACHED*

(C)  With respect to Defendant (Name) Assistant Warden Walter White , describe the acts or omissions of **this** Defendant that form the basis for claim #1 and any harm caused by it.

Assistant Warden Walter White is one of three Dipilinary Hearing Committee Members that as a whole voted for a guilty verdict at my hearing without checking to see what was being done to other residents who quit their kitchen jobs. Mr. White is 2nd in command at this unit and superior in rank to all officers involved in this claim and he should be policing the actions of his officers under him to ensure that all *SEE ATTACHED*

Are you suing **this** Defendant in his or her: (check the appropriate blank)

_____    **official capacity only** (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)

_____    **personal capacity only** (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

✓    **both official and personal capacity**

**If you are asserting an official capacity claim,** please describe the custom or policy that you believe caused the violation of your constitutional rights.

I feel that an offical capacity claim is suitable because the customs or policies set forth and handed down by the governmental entity in the handbook failed and caused a violation of my constitutional rights and numbers 2, 4, 14, 16 and 17 of the Residents Bill of Rights on pages 4 and 5 of the Resident Handbook. The act of discrimination is a direct contradiction to the entities Mission Statement proclaimed in

Official capacity claim    Continued from p. 6
contridictory to the Mission Statement proclaimed by the
entity on p. 4 of the handbook.


(C) residents are treated equal and are being held to the same
consequences for their actions to prevent discrimination and the
violation of their constitutional rights and the Bill of Rights in the
resident handbook. The guilty verdict voted for by The Disiplinary Hearing
Committee members brought on me negative feelings of anger, agression,
resentment, stress, and anxiety which fueled the Manic Bi-Polar,
Severe Anxiety and Post Traumatic stress Disorders I was diagnossed
with by doctors and conselors at Delta Conseling Associates in Crossett
AR in 2016 and left me feeling trapped and violated. This
sort of action is a direct contridiction to the Mission Statement
proclaimed on p. 4 of the handbook.


Official capacity claim
Resident Handbook

Shria W. King #659717
8-21-20

**(D) With respect to Defendant (Name)** _Carol Robertson_ **, describe the acts or omissions of this Defendant that form the basis for claim #1 and any harm caused by it.**

Carol Robertson is one of three Disciplinary Hearing Committee Members that as a whole voted for a guilty verdict at my hearing without checking to see what was being done to other residents who got their kitchen jobs. Carol Robertson is Treatment Supervisor, an educated lady and should be doing her part to ensure that residents aren't discriminated against and their rights not violated.

SEE ATTACHED

**Are you suing this Defendant in his or her: (check the appropriate blank)**

_____ official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)

_____ personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

✓ both official and personal capacity

**If you are asserting an official capacity claim, please describe the custom or policy that you believe caused the violation of your constitutional rights.**

I feel an official capacity claim is suitable because the customs and policies set forth and handed down by the governmental entity failed and caused a violation of my constitutional Rights and numbers 2, 4, 14, 16, and 19 of the Residents Bill of Rights on pages 4 and 5 of the Resident Handbook and directley contridicts the mission statement claimed on pr 4 of the handbook.

**Claim Number # 2:**

**Type of Claim (for example: excessive force, denial of medical care, etc.):**

Entrapment; Phone was not suspended while I was under restriction which I feel was an act of entrapment and deliberate setup for failure and further dislinary problem

**Date of the Occurrence:** _7-15-20_

**Name of each Defendant involved:** _Beverley Brown_

_____

_____

_____

**Arkansas Community Correction**
## CARDINAL RULE VIOLATION REPORT & NOTICE TO ACCUSED RESIDENT

**PART 1**

**Instructions:** Complete both sides of this form. Please submit completed forms promptly to the Shift Supervisor. The Inquiry Officer or ARO will provide a copy of **SIDE A** to the accused and SOD.

| Alvin King | 659717 | 07/15/20 | 4:11 | ☐ AM ☒ PM | BK 1 |
|---|---|---|---|---|---|
| Accused Resident's Name (Print) | Resident's Number | Incident Date | Time | | Location |

**Description of Alleged Incident** Continuation Sheets Attached: _____ pages, or ☐ **NONE**

07/09/20 Resident King, was placed on loss of commissary, telephone, visitation, and video visitation for 20 days by the Disciplinary Hearing Committee. On 07/15/20 resident Alvin King, ADC #659717, made a call to family/friend while still on restrictions from the Disciplinary Hearing Committee.

**Alleged Cardinal Rule(s) Violated** (Violation Code Number & Description):

CR-12 Residents must not refuse to follow orders by staff.

**Remarks** (ARO: Document any limitations on witnesses and the reason):

**Certification:** I certify that the above description of the incident is true and accurate to the best of my knowledge and belief.

| B. Brown | 7/23/2020 | *B. Brown* |
|---|---|---|
| Reporting Employee Name (Print) | Date of Report | Reporting Employee Signature |

**PART 2**         **NOTICE OF RULE VIOLATION**

**STAFF MEMBER READ TO ACCUSED:**

This is notice that you are accused of the rule violation described above. You are ordered not to attempt to influence anyone to make untrue or misleading statements on your behalf, or to speak to anyone concerning this incident other than your counselor, hearing assistant (if assigned), inquiry officer, or others acting in an official capacity, concerning this incident. If you want the Disciplinary Hearing Committee to hear from any witnesses on your behalf, you must list those witnesses in the space below at this time. The appointed staff inquiry officer will obtain statements from all witnesses. You are not to discuss this incident with witnesses or attempt to obtain statements from them. Your hearing on this matter is scheduled for:

9:30 ☒ AM ☐ PM on (Day/Date): Tues 7-28-20 at (location): omega

**Note to Staff Member:**    Also have the resident complete **Form 2, "Explanation of the Disciplinary Process."**
If the resident indicates a desire to waive his/her right to attend the hearing, complete **Form 3, "Hearing Appearance Waiver and Plea."**

☐  I agree to waive the 24 hour advance notice for a hearing and accept the date and time indicated.

_____
Resident's Signature

List the names of your witnesses. Witnesses must be identified at the time of this notification.

| *Alvin King* | *[signature]* | 7-22-2020 /9:50 Am |
|---|---|---|
| Signature of Resident | Signature of Notifying Officer | Date/Time of Notice |

Was a Hearing Assistant refused by resident?    ☐ **YES** ☐ **NO** If yes, signature of Resident: _____

**CONTROL NUMBER:**  2020-07-064

Original: DHC Hearing Packet
**COPY: SIDE A ONLY** to resident                    AD 18-01 Form 1 Side A

Yes I do, and with all due respect, I do not want to be interrupted

With all due respect to this court and all its members, I arrived at this unit on 5-21-20 and have yet to receive a handbook formally informing or notifying me of all my privledges, rules to abide by to keep those privledges, or any punishment or sanction for voilation of such rules. This displinary is a direct reflection of a previous disciplinary I received on 7-9-20 for quitting my A.M. Kitchen job. other inmates in my barracks quit their kitchen jobs Without notice and without any violations or sanctions. hich is discrimnation. What's done for one that's not done for another or what is not done for or to one that is done for er to another is discrimination plain and simple. During a physical examination performed on me shortly after my arrival to this unit, the practicioner informed me of elevated liver enzymes which is a reflection of the Hepititis virus. She continued to say that in her opinion, the elevated levels were not high enough for her to tell me that I was infected with Hep. C. I then asked her about Hep B because I'm positive for Hep B, which eliminates me from any clearence to work in any kitchen regulated by the state of Arkansas and she said they don't test for Hep. B. The Osceola Acc Unit does test for Hep B, and is the origin of my positive Hep. B test result. Furthermore, As a result of the information I have provided and any that I might further collect, I'm prepared to appeal to all levels of appeal upon a guilty conviction, notify the Arkansas Dept. of Health of my medical issues in relation to my work here in the kitchen, and exercise any and all legal actions that I'm entitled should any of my suspended sentence be imposed. Lastly, I request to see the video footage that Sgt. amphbel says Ms. Brown used to prove I used the phone.

with all the things the A.M. Kitchen job. This disciplinary is a direct reflection of the one I received on 7/9-20 for quitting my A.M. Kitchen. And the information here in is directly related to that disciplinary. 10 inmates in my barracks alone quit their A.M. Kitchen Jobs without notice of ... many ... which is disciplined ... for one for one that's not done ...

... Hep. Virus. She continued to say that ... enough to make a positive progress for Hep. C ... Osceola ACC unit does test for Hep. B and I ... the unit did not test for ... Rept. or Board of Health ... Kitchen regulated by the Arkansas Rept. or Board of Health ... solution prepared to ... notify the Arkansas Rept. or Board of Health at my ... work in the Kitchen, and exercise any and all legal actions to which ...

Gm Certified.
20 21 22

**ARKANSAS DEPARTMENT OF COMMUNITY CORRECTION**
**Disciplinary Appeal Form**

Resident  Alvin King          ACC#      659717                          Date:  08/06/2020

Disciplinary Appeal Number:  2020-07-054                          Admin. Specialist Beverly Brown

## RESPONSE FROM THE DEPUTY DIRECTOR OF RESIDENTIAL SERVICES:

Affirm:     X          Reverse:              Modify:

In receipt of your appeal of the findings of the displinary action taken against you, I am upholding the sanctions imposed by the DHC. You plead guilty to the Cardinal Rule Violation therefore you can not appeal the finding of guilt.

_____          8/17/2020
Deputy Director, Residential Services          Date

**\*Note:  The decision of the Deputy Director is final.**

(D)                          Continued From p. 7

The guilty verdict voted for by the Disiplinary Hearing Committee
Members brought on me negative feelings of anger, agression, resentment,
stress and anxiety which fueled the Mania Bi-Polar, Severe Anxiety
and Post Traumatic Stress Disorders I was diagnossed with by doctors
and conselors at Delta Conseling Associates in Crossett, AR in 2016
and left me feeling trapped and violated. Her actions in this
complaint I feel are a direct contradiction to the Mission Statement
proclaimed in the handbook.

                                    Alvin King # 659717
                                       8-22-20

**(A) With respect to Defendant (Name)** *Beverly Brown*_____, **describe the acts or omissions of this Defendant that form the basis for claim #2 and any harm caused by it.**

This claim #2 of entrapment is directley related to the claim of discrimination in Claim #1. On 7-23-20 Ms. Brown wrote me a major displinary for using the phone while under a 20 day restriction from phone, homeware, and Commissary that was imposed on me due to a displinary I received on 7-3-20 for quitting my kitchen job which I've presented a discrimination claim for in Claim #1 of this legal action. The

SEE ATTACHED

**Are you suing this Defendant in his or her: (check the appropriate blank)**

_____ **official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)**

_____ **personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)**

__✓__ **both official and personal capacity**

**If you are asserting an official capacity claim,** please describe the custom or policy that you believe caused the violation of your constitutional rights.

With all due respect and without malicious or frivilous intent, from where I stand, I can't see any cale or consideration being demonstrated by the governmental entity to ensure that their customs and policies are being exercised to prevent the violation of some of the constitutional rights of the residents or inmates being held at their facility. It's not the custom or policy itself causing the violations, it's

SEE ATTACHED

**(B) With respect to Defendant (Name)**_____, **describe the acts or omissions of this Defendant that form the basis for claim #2 and any harm caused by it.**

_____

_____

_____

_____

_____

_____

Continued from p. 8

VI. Statement of Claim

Claim #2

(A) Commissary Manager shut my commissary account down immediatley after the restriction was imposed so that it wouldn't be used for any purpose other than $25 a week for hygiene, envelopes, and writing material. That weekly amount fell to $6 per week or 6 items which ever was reached first. *in isolation* Moving right along, Ms. Brown and the Disiplinary Hearing Committee members did not shut down my phone and home wave (video visitation). There's a 14 day gap between the time the 20 day restriction was imposed and the time that Ms. Brown filed her report. Had Ms. Brown and the Dislinary Hearing Committee members shut my phone account down as did the Commissary Manager my commissary account, I wouldn't have used a *phone* and wouldn't have received another major disiplinary which brought back all the suspended conditions of the first disiplinary I received on 7-3-20. On 8-27-20 my 30 days disiplinary detention that I received for using the phone while under restriction expired but I was not released from isolation. For every 30 days an inmate is isolated, he has 48 hrs. to use the phone and make regular commissary if and only if his normal commissary day falls within the 48 hr. period. On 8-27-20 as I began my 48 and as I tried to exercise my phone priveledge, my phone account was suspended and I waited approximately 3 hrs. for Ms. Brown to get my phone turned back on. I will not get that 3 hrs. back at the end of the 48. Ms. Browns' primary reason for filing her report was for using the phone while under restriction, but she has to use refusal to follow orders for her excuse to file her report. The only place in the Resident Handbook where using the phone while under restriction before the phone is suspended is mentioned is under Resident Phone System Information part 25 on p. 16 where it states that, if you make a call or try to make a call before your phone is suspended, you will be written a major rule violation. It makes no mention of a cardinal rule violation, for using phone but only using after receiving a cardinal.

I don't know the relevance that members of the court see in my reason behind using the phone, but it was to request money from my mother to purchase soap, deodorant, and toothpaste to be in

over to back ➔

compliance with the personal hygiene policy on p. 19 of handbook. I had began to receive threats by fellow inmates about hygiene and borrowing hygiene items. The Hearing Committee was made aware of these reasons.

(A) Official capacity claim

the failure of the custom or policy causing the violations. For whatever reason and or whoever is to blame, the entitys customs and or policies are failing to prevent the violation of some constitutional rights and other rights they have listed in their handbook making them (the entity) I feel just as much or more liable than staff members personally.

Alvin King
8-22-20

I thought I received 30 days displinary detention for the cardinal violation I received for using the phone under restriction. On 8-27-20 my 30 days expired but didn't get released from isolation. I learned from Sgt. Harrison that the displinary hearing committee stacked (sorry) stacked cardinal for the displinary for using phone on top of the cardinal or major displinary from the 30 days in the 515 from the first which gave me 60 days in isolation. Sgt. Harrison says he disagrees with all this.

When my 1st 30 days expired and my 48 hr release to use the phone started it was around 3:00 before they got the phone account turned back on so I could use it. The ending time of my hearing was 1:36 p.m. on 7-28-20. My 48 should've started on 8-27-20 at 1:36 p.m. My Mat wasn't brought to me till approx. 2:00 p.m and I wasn't able to use the phone till approx. 3:00 or a little after. On 8-29-20 my 48 ended and phone was suspended at precisley 1:36 p.m. with Ms. Brown not even present at the unit. There's a 14 day gap between the time of the imposed restriction 7-9-20 and the time Ms. Brown filed her report 7-23-20 for me using the phone on 7-15-20. Had Ms. Brown suspended my account at the time of imposed restriction instead of two weeks later I wouldn't have used the phone, got the 2nd displinary, or be in isolation for 60 days.

Alvin King #659717
8-30-20

Are you suing <u>this</u> Defendant in his or her: (check the appropriate blank)

_____    **official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)**

_____    **personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)**

_____    **both official and personal capacity**

<u>If you are asserting an official capacity claim</u>, please describe the custom or policy that you believe caused the violation of your constitutional rights.

_____

_____

_____

_____

_____

_____

**(C)  With respect to Defendant (Name)** _____, describe the acts or omissions of <u>this</u> Defendant that form the basis for claim #2 and any harm caused by it.

_____

_____

_____

_____

_____

_____

Are you suing <u>this</u> Defendant in his or her: (check the appropriate blank)

_____    **official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)**

_____    **personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)**

_____    **both official and personal capacity**

**If you are asserting an official capacity claim**, please describe the custom or policy that you believe caused the violation of your constitutional rights.

_____

_____

_____

_____

_____

_____

(D)  With respect to Defendant (Name) _____ , describe the acts or omissions of this Defendant that form the basis for claim #2 and any harm caused by it.

_____

_____

_____

_____

_____

_____

Are you suing this Defendant in his or her: (check the appropriate blank)

_____    official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)

_____    personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

_____    both official and personal capacity

**If you are asserting an official capacity claim**, please describe the custom or policy that you believe caused the violation of your constitutional rights.

_____

_____

_____

_____

_____

_____

-10-

**Claim Number # 3:**

**Type of Claim (for example: excessive force, denial of medical care, etc.):**

Cruel and Unual Punishment: SIS is within the Allowable Range of Sanctions but not mandetory as given at the top of p. 14 in handbook.

**Date of the Occurrence:** 7-9-20

**Name of each Defendant involved:** Andrew Ruh, Walter White, Carol Robertson

**(A) With respect to Defendant (Name)** Andrew Ruh **, describe the acts or omissions of this Defendant that form the basis for claim #3 and any harm caused by it.**

This claim #3 is directly related to claims #1 and #2. Chreif Security officer Major Andrew Ruh is one of three DHC members that as a whole voted for a guilty verdict at my hearing on 7-9-20 for a displinary I received on 7-3-20 for quitting or not returning to work to my A.M. kitchen, i.b. Major Ruh and his fellow DHC members imposed SIS which is in the Allowable Range of Sanctions for Cardinal Rule Violations

SEE ATTACHED

**Are you suing this Defendant in his or her: (check the appropriate blank)**

_____ official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)

_____ personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

___✓___ both official and personal capacity

**If you are asserting an official capacity claim, please describe the custom or policy that you believe caused the violation of your constitutional rights.**

The assertion of an official capacity claim here is exactly the same as the assertion of the official capacity claim under section(A) claim #2 on p.8

claim #3          Continued from p.11

(A) but is not mandatory as given at the top of p.14 in the resident handbook. Because SIS is not mandatory, due to the petty non-violent nature of the infraction, and due to the fact that Ms. Kennedy had to manipulate her reason for her report as refusal to follow orders to have a legitimate purpose for filing the report, I feel that the conditions of the SIS imposed were cruel and unusal punishment. The conditions of the SIS were as follows: Reccomendation for Refferal to ADC, 30 days displinary detention (isolation), and reduction of class from II to III. This SIS came back to me and was imposed as a result of a displinary I received on 7-23-20 for using the phone while on restriction. (Ref. to claim #2 sec. (A))

claim #3          Continuation from p.11

(B) in the Resident Handbook. Because SIS is not mandatory, due to the petty non-violent nature of the infraction, and due to the fact that Ms. Kennedy had to manipulate her reason for her report as refusal to follow orders to have a legitamate purpose for filing the report, I feel that the conditions of the SIS imposed were cruel and unusal punishment. The conditions of the SIS were as follows: Reccomendation for Refferal to ADC, 30 days displinary detention (isolation), and reduction of class from II to IV. This SIS came back to me and was imposed as a result of a displinary I received on 7-23-20 for using the phone while on restriction. (Ref. to claim #2 sec. (A))

claim #3          Continuation from p.12

(C) but is not mandatory as given at the top of p.14 in the Resident Handbook. Because SIS is not mandatory, due to the petty non-violent nature of the infraction, and due to the fact that Ms. Kennedy had to manipulate her reason for her report as refusal to follow orders to have a legitamate purpose for filing the report, I feel that the conditions of the SIS imposed were cruel and unusal punishment. The conditions of the SIS were as follows: Reccomendation for Refferal to ADC, 30 days displinary detention (isolation), and reduction of class from II to III. This SIS came back to me and was imposed as a result of a displinary I received on 7-23-20 for using the phone while on restriction. (Ref. to claim #2 sec. (A))

Alvin W. King #659717
8-23-20

The displinary hearing committee stacked the two Cardinals <sup>displinarys</sup> (ran them consecutive instead of concurrent which gave me another 30 days displinary detention for a total of 60 which makes the punitive measures even more cruel and unusual! The referral for transfer to ADC which would've give me another 180 day parole violation sanction had I not signed for or finalize a new sentence, 60 days displinary detention and reduction in class from II to IV is absolutely unecessary in my case especially since the staff had to manipulate the purpose for the 1st displinary and Ms. Brown, the phone specialist, did not do her job and turn my phone account off so it couldn't have been used which would've eleminated a 2nd displinary. I think it's important to note that after I was thrown into isolation over this phone bit, Ms. Brown did then suspend my phone account which brought about more conflict when my 48 hr. releif rolled around because Sgt. Brooks had to go to Ms. Browns office and get her to turn my phone account back on so I could use it. At the end of my 48 hr. releif the computer aatomatically suspend my phone account at the time it should have started at the beginning of my 48 releif. All of this took place (the end of my 48hr. releif) on a day and at a time when Ms. Brown was not there which led to an approximate 3hr. loss of phone time on my 48hr. releif. Just for clarity, the 48hr. releif is for an inmate serving consecutive 30 day displinary detention sentences allowing him 48 hrs. to use the phone and to go to commissary if his 48hr. releif falls on his regular commissary day or time.

**(B) With respect to Defendant (Name)** _Walter White_ , describe the acts or omissions of **this** Defendant that form the basis for claim #3 and any harm caused by it.

Assistant Warden Walter White is one of three DHC members that as a whole voted for a guilty verdict at my hearing on 7-9-20 for a displinary I received on 7-3-20 for quitting or not returning to work to my A.M. Kitchen job. Mr. White and his fellow DHC members imposed 5IS which is in the Allowable Range of Sanctions for Cardinal Rule Violations but is not mandatory as given at the top of p. 14 (SEE ATTACHMENT
To p. II continuation of p.12 sec. (B) under claim # 3)

**Are you suing this Defendant in his or her: (check the appropriate blank)**

_____ **official capacity only** (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)

_____ **personal capacity only** (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

✓ **both official and personal capacity**

**If you are asserting an official capacity claim,** please describe the custom or policy that you believe caused the violation of your constitutional rights.

The assertion of an official capacity claim here is exactly the same as the assertion of the official capacity claim under sec. (A) claim #2 on p. 8 and the exact same as sec. (A) under claim #3 on p. II.

**(C) With respect to Defendant (Name)** _Carol Robertson_ , describe the acts or omissions of **this** Defendant that form the basis for claim #3 and any harm caused by it.

Treatment Supervisor Carol Robertson is one of three DHC members that as a whole voted for a guilty verdict at my hearing on 7-9-20 for a displinary I received on 7-3-20 for quitting or not returning to work to my A.M. Kitchen job. Ms. Robertson and her fellow DHC members imposed 5IS which is in the Allowable Range of Sanctions for Cardinal rule violations (SEE ATTACHMENT
To p. II continuation of p.12 sec. (C) under claim #3)

Are you suing **this** Defendant in his or her: (check the appropriate blank)

____  **official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)**

____  **personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)**

____  **both official and personal capacity**

If you are asserting an official capacity claim, please describe the custom or policy that you believe caused the violation of your constitutional rights.

_____

_____

_____

_____

_____

_____

**(D)  With respect to Defendant (Name)** _____ **, describe the acts or omissions of this Defendant that form the basis for claim #3 and any harm caused by it.**

_____

_____

_____

_____

_____

_____

Are you suing **this** Defendant in his or her: (check the appropriate blank)

____  **official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)**

____  **personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)**

____  **both official and personal capacity**

If you are asserting an official capacity claim, please describe the custom or policy that you believe caused the violation of your constitutional rights.

_____

_____

_____

_____

_____

_____

**Claim Number # 4:**

**Type of Claim (for example:  excessive force, denial of medical care, etc.):**

*Cruel and Unusual Punishment: No out of cell exercise or outside*

*exercise while in isolation.*

**Date of the Occurrence:**  *Entered isolation on 7-28-20, scheduled for release 9-29-20*

**Name of each Defendant involved:**  *Andrew Ruh, Lt. Perkins, Lynda Rayburn*

_____

_____

_____

**(A) With respect to Defendant (Name)** *Andrew Ruh*            **, describe the acts or omissions of this Defendant that form the basis for claim #4 and any harm caused by it.**

*Cheif Security Officer Major Andrew Ruh was one of three IHTC members*

*that as a whole voted to impose a SIS on me for a displinary that I*

*received on 7-23-20 for using the phone while under restriction.*

*The conditions of the SIS were a Reccomendation for Refferal to*

*ADX, 60 days displinary detention, and reduction of class from II to*

*IV. The two man isolation cells are approximately 8' wide by 10'  SEE ATTACHED*

**Are you suing this Defendant in his or her: (check the appropriate blank)**

_____    **official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)**

_____    **personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)**

_✓_    **both official and personal capacity**

**If you are asserting an official capacity claim, please describe the custom or policy that you believe caused the violation of your constitutional rights.**

*With all due respect and without malicous or frivilous intent,*

*from where I stand, I can't see any care or consideration being*

-14-

**Arkansas Community Correction**
## COMPLAINT FORM FOR RESIDENTS

Alvin King
_Resident Name_

659717
_ACC #_

8-2-20
_Date_

Omega Unit Seg. 11
_Unit Assignment_

_Job Assignment_

A resident must first attempt to informally resolve complaints, grievances, problems, or incidents by submitting a "Complaint Form for Residents" or discussing the matter with an appropriate person such as a counselor, the Residential Supervisor assigned to his/her housing area, or the Shift Supervisor on duty. Note, this step is NOT required for emergency grievances and allegations of sexual abuse; the Resident Grievance and Appeal Process policy addresses these situations.

**Describe the Problem. If appropriate include a recommended solution:**

I have been back here in a seg cell for a whole week now locked down for 24 hours a day. The law doesn't allow it, it's cruel and unusual punishment, and I intende on doing anything and everything I'm entitled to do about it.

Alvin King
_Signature of Resident_

8-2-20
_Date_

### RESPONSE BY STAFF OR MEDICAL
I was not seen. 8-30-20

_Date Received_    _Date Resident was Seen_    _Printed Name of Staff / Medical_ Alvin King #659717
8-30-20

Response / Action Taken: Response is not proper or complete. Alvin King #659717
8-30-20

Due To The short Term nature of confinement in the facility, accompanied with the increased need for a secured environment, out of cell exercise will not be permitted for residents in seg.

### RESIDENT'S ASSESSMENT OF RESPONSE

☐ My complaint has been resolved and/or, I no longer want to pursue this matter.

☐ My complaint has NOT been resolved and I want to pursue this matter (options include submitting a grievance)

_Resident's Signature_

_Date Signed_

Staff/Medical: Send response to the ARO within 5 business days
Copy: Resident

If a law exists, that states that inmates have to be given out of cell exercise at particular given intervals, I have a hard time beleiving or accepting that due to the duration of stay at this facility excuses them from giving out of cell exercise.

Alvin King #659717
8-30-20

AD 17-08

Claim #4                    Continued from p.14

(A) long with two racks that extend out from the back wall, a small seat, table and a toilet that extend out from the right hand wall looking in the cell. After you subtract the space for the two racks, seat and table and toilet, a space of approximatley 4' wide by 6' long is left for two inmates to try to move around in to try and settle their food after they eat and try to keep their blood moving so it doesn't clot up on them. I'm having to sometimes take stool softner which I never have had to take before due to improper bowel movement and my feet and legs are stiff and somewhat swollen from not being able to move around in a proper manner. There's no out of cell exercise allowing the inmates adequate space to move around and get sunlight and or fresh air. The only time out of the cell is 3 times a week to walk approximatley 10' to shower. When I confronted ARO Allan stricklin regarding the crowded confined conditions of the isolation unit here, he stated that due to this being a short term facility no outside cell exercise is allowed which I myself as well as my fellow inmates have a serious problem with. In the other 9 correctional facilities I've been to besides this one, have an enclosed space outside the isolation cell area with an open top that the inmate or inmates are allowed out 1 hr. per 24 hr. period provided weather permitting and all but 1 of those facilities had gyms which allowed out of cell exercise when weather did not permit outside exercise. My fellow inmates and I feel all this to be very cruel and unusual punishment.

                                        Alvin King #659717
                                            8-25-20

demonstrated by the governmental entity to ensure their customs and policies are being exercised in a manner that prevents the violation of some constitutional rights of the residents or inmates being held at their facility. Its not the custom or policy itself *SEE ATTACHED*

**(B) With respect to Defendant (Name)** Lt. Perkins _____, **describe the acts or omissions of this Defendant that form the basis for claim #4 and any harm caused by it.**

Lt. Perkins was one of three DHC members that as a whole voted to impose a SIS on me for a disiplinary that I received on 7-23-20 for using the phone while under restriction. The conditions of the SIS were a Raccomendation for Reffereal to ADC, 60 days disiplinary detention, and reduction in class from II to IV. The two man isolation cells are approximatley 8' wide by 10' long with two racks that *SEE ATTACHED*

**Are you suing this Defendant in his or her: (check the appropriate blank)**

_____ **official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)**

_____ **personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)**

__✓__ **both official and personal capacity**

**If you are asserting an official capacity claim, please describe the custom or policy that you believe caused the violation of your constitutional rights.**

The assertion of official capacity claim here is identical to the assertion of official capacity claim under sec. (A) claim #4 on pgs. 14 and 15.

_____

_____

_____

**(C) With respect to Defendant (Name)** Lynda Rayburn _____, **describe the acts or omissions of this Defendant that form the basis for claim #4 and any harm caused by it.**

Treatment Coordinator, Lynda Rayburn, was one of three DHC members that as a whole voted to impose a SIS on me for a displinary that I received on 7-23-20 for using the phone while

Claim #4          Continued from p. 15

(B) extend out from the back wall, a small seat, table, and a toilet that extend out from the right hand wall looking into the cell. After you subtract the space for the two racks, seat and table and toilet, a space of approximatley 4' wide by 8' long is left for two inmates to try to move around in to settle their food and try to keep their blood moving so it doesn't clot up on them. There's no out of cell exercise allowing the inmates adequate space to move around and get some sunlight and/or fresh air. I've had to start taking stool softener on occasion and never have had to do so before as a result of not having the adequate space to move around and settle my food and cause my bowels to move propesley. Also, my feet and legs are somewhat swollen from not being able to move around in a proper manner. The only time out of the cell is 3 times a week to walk approx. 10' to shower. All other correctional facilities I've been to have an enclosed space outside the isolation cell area with an open top that the inmate is allowed 1hr. per 24hr. period out of the cell provided weather permitting, and all but one of these facilities had gyms allowing outside cell exercise when weather did not permit going outside. When I confronted ARC Allen Stricklin regarding the crowded confined conditions of the isolation unit here, he stated that due to this being a short term facility no outside exercise is allowed. My fellow inmates and I feel that this is very cruel and unusual punishment.


(A) official capacity claim Continued from p. 15
Causing the violation, it's the failure of the custom or policy causing the violations. For whatever reason and/or whoever is to blame, the entity's customs and/or policies are failing to prevent the violation of some constitutional rights and other rights they have listed in their handbook making them I feel just as much or more liable than staff members personally.
Alvin King #659717
8-26-20

_under restriction. the conditions of the SIS were a Reccomindation_
_For Refferal to ADC, 60days displinary detention, and reduction_
_in class from II to III. The two man isolation cells are opproximatly_
                                                          _SEE ATTACHED_

**Are you suing this Defendant in his or her: (check the appropriate blank)**

_____    **official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)**

_____    **personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)**

√    **both official and personal capacity**

**If you are asserting an official capacity claim, please describe the custom or policy that you believe caused the violation of your constitutional rights.**

_The assertion of official capacity claim here is identical_
_to the assertion of official capacity claim under sec. (A)_
_claim #4 on pgs. 14 and 15._

_____

_____

_____

**(D)  With respect to Defendant (Name) _____, describe the acts or omissions of this Defendant that form the basis for claim #4 and any harm caused by it.**

_____

_____

_____

_____

_____

_____

**Are you suing this Defendant in his or her: (check the appropriate blank)**

_____    **official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)**

_____    **personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)**

_____    **both official and personal capacity**

-16-

<u>Claim #4</u>              Continued from p. 16

(C) 8' wide by 10' long with two racks that extend out from the back wall, a small seat, table, and a toilet that extend out from the right hand wall looking into the cell. After you subtract the space for the two racks, seat and table, and toilet, a space of approximately 4' wide by 8' long is left for two inmates to try to move around in and settle their food after they eat and try to keep their blood moving so it doesn't clot up on them. I'm having to sometimes take stool softener which I never have had to take before due to improper bowel movement and my feet and legs are stiff and somewhat swollen from not being able to move around in a proper manner. There's no out of cell exercise allowing the inmates adequate space to move around and get sunlight and or fresh air. The only time out of the cell is 3 times a week to walk approximatley 10' to shower. When I confronted PRO Allan Stricklin regarding the crowded confined conditions of the isolation unit here, he stated that due to this being a short term facility, no outside cell exercise is allowed. In the other 4 correctional facilities I've been to besides this one, have an enclosed space outside the isolation cell area with an open top that the inmate is allowed out 1hr. per 24hr. period provided weather permitting and all but 1 of those facilities had gyms which allowed out of cell exercise when weather did not permit outside exercise. I feel all this is very cruel and unusual punishment.

                                        Alvin King #659717
                                        8-26-20

_____
_____
_____
_____
_____

**Claim Number #** 4

**Type of Claim (for example: excessive force, denial of medical care, etc.):**

_Medical negligence: Two inmates positive for Covid-19 were quarentined in the isolation unit with those of us their possessing at least 1 Covid-19 negative test result._

**Date of the Occurrence:** _8-7-20_

**Name of each Defendant involved:** _Arkansas Dept. of Corrections' Division of Community Corrections_

_____

**(A) With respect to Defendant (Name)** _ADC/DCC_ , describe the acts or omissions of <u>this</u> Defendant that form the basis for claim #4 and any harm caused by it.

_I or none of my fellow-inmates knew then or know now exactly whose decision it was to quarentine the infected inmates in isolation with us inmates that they knew had tested negative for the virus nor did we know then or know now that they did not quarentine more infected inmates that we don't know about. Billy Owens, my cellmate, and I came to isolation just one day apart from the same barracks. We both possessed two negative_                    SEE ATTACHED

**Are you suing <u>this</u> Defendant in his or her: (check the appropriate blank)**

✓ official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)

____ personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

____ both official and personal capacity

<u>If you are asserting an official capacity claim, please describe the custom or policy that you believe caused the violation of your constitutional rights.</u>

_official capacity claim only because we the inmates couldn't positively be sure whose decision it was to house the infected inmates with us that they knew were negative for the virus._

-10-

I've been in a seg. cell for a whole week now kept down for 24 hours a day, The law doesn't allow it, it's cruel and unusual punishment and I intend to do anything and every thing I'm entitled to do about it,

I was told in a previous request, by you or Ms. Woods, I don't remember exactly which, that I couldn't and wouldn't move up in class from II to I until I got to ADC. With that being said how can my class be reduced from II to IV if it can't progress from II to I. How and then will it get back to class II.

7 on your side

Inmate Haym said that he and his fellow barracks inmates were asked to write witness statements against a Srg. who informed them that more money was being paid too them be cause they had corona virus.

On 8-13-20 an inmate was brought from 7 barracks to seg. 7 barracks is gttaran tine barracks for Covid #19.

Haym says he doesn't know if he's the virus or not, We all have at least two negative test results for the virus.

Says inmates in 7 barracks were throwing up blood.

This is included to show that information used in claim #6 was documented at the actual time that it was stated or happened.

Alvin King #659717

8-30-20

<u>Claim #6</u>                    Continued from p.20

(A) negative test results with the most recent being within 2 or 3 days prior to being brought to isolation. We overheard a nurse and an officer discussing that the 2 inmates next door to us in the isolation unit were positive and when we asked them they admitted that they were positive for the virus. They give us our, or a mat at 7:00 p.m. and take it at 7:00 A.M. the following morning everyday with no way (or know designated or set way) of knowing what cell the mat came from in the A.M. that their giving out in the P.M. They could have been giving me an my cellmate this evening the mats that came from the cell of the infected inmates that same morning. For this reason we cleaned our mats every eving with state soap containing lye, but we and the other inmates were still put at risk. They had other places like empty classrooms and Administrative housing that weren't being used that they could have put these inmates in. About a week prior to this time, we were told by some different floor officers that all of 7 barracks positive for the virus.

   On 8-12-20 an inmate Haym (not sure about spelling), was brought to isolation and temporarily held in one of the holding cells in isolation. He, Haym, stated that he wasn't sure if he had the virus or not but 7 barracks was the quarrantine barracks for inmates they knew to be positive and that some of the inmates were throwing up blood. He also stated that he and his fellow 7 barracks inmates were asked to write witness statements against a Sgt. who informed them that more money was being paid to them than the normal amount, for housing the inmates who were positive for the virus.

   Also, it was confirmed by some officers that staff wasn't being tested for the virus.

   I see this claim to be related to the rest or previous because I was being held in isolation for punishment to or for those previous.

                                        Alvin King #659717
                                            8-30-20

**Claim Number #5:**

**Type of Claim (for example: excessive force, denial of medical care, etc.):**

Discrimination: I was not able to be housed in isolation cell by myself but other inmates (at least 5) were allowed to be housed by themselves.

**Date of the Occurrence:** 7-28-20

**Name of each Defendant involved:** Sgt. Baker

**(A) With respect to Defendant (Name)** Sgt. Baker **, describe the acts or omissions of this Defendant that form the basis for claim #3 and any harm caused by it.**

When I was taken to isolation by Sgt. Baker after my disciplinary on 7-28-20, I requested to be put in a cell by myself like at least 5 other inmates were so that I would have the same privacy that they had but Sgt. Baker ignored and put me in a cell with another inmate. I witnessed Sgt. Baker and other officers turn inmates out of isolation early to make room for another inmate because inmates being *SEE ATTACHED*

**Are you suing this Defendant in his or her: (check the appropriate blank)**

_____ official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)

_____ personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

✓ both official and personal capacity

**If you are asserting an official capacity claim, please describe the custom or policy that you believe caused the violation of your constitutional rights.**

With all due respect and without malicious or frivilous intent, from where I stand, I can't see any care or consideration being demonstrated or excercised by the governmental entity to ensure that their customs and policies are being exercised in a manner that prevents the violation of some constitutional rights of the residents or inmates *SEE ATTACHED*

-17-

<u>Claim #5</u>          Continued from p. 19

(A) housed alone refused to let them put someone else in the cell with them. I feel that I was discriminated against because other inmates were being allowed to be housed by themselves but I could not be housed by myself.


(A) Continued from p. 19

official capacity claim

being held at their facility. It's not the custom or policy itself causing the violations, it's the failure of the custom or policy causing the violation. For whatever reason and/or whoever is to blame the entity's customs and/or policies are failing to prevent the violation of some constitutional rights and other rights they have listed in their handbook making them (the entity) I feel just as much or more liable than staff members personally.

Alvin King #65971P

8-27-20

(B)  With respect to Defendant (Name) _____, describe the acts or omissions of this Defendant that form the basis for claim #3 and any harm caused by it.

_____

_____

_____

_____

_____

_____

Are you suing this Defendant in his or her: (check the appropriate blank)

_____    official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)

_____    personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

_____    both official and personal capacity

If you are asserting an official capacity claim, please describe the custom or policy that you believe caused the violation of your constitutional rights.

_____

_____

_____

_____

_____

_____

(C)  With respect to Defendant (Name) _____, describe the acts or omissions of this Defendant that form the basis for claim #3 and any harm caused by it.

_____

_____

_____

_____

_____

_____

Are you suing this Defendant in his or her: (check the appropriate blank)

_____   official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)

_____   personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

_____   both official and personal capacity

If you are asserting an official capacity claim, please describe the custom or policy that you believe caused the violation of your constitutional rights.

_____

_____

_____

_____

_____

_____

(D)  With respect to Defendant (Name) _____, describe the acts or omissions of this Defendant that form the basis for claim #3 and any harm caused by it.

_____

_____

_____

_____

_____

_____

Are you suing this Defendant in his or her: (check the appropriate blank)

_____   official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)

_____   personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

_____   both official and personal capacity

If you are asserting an official capacity claim, please describe the custom or policy that you believe caused the violation of your constitutional rights.

_____

_____

Address: _____

_____

V.   **At the time of the alleged incident(s), were you:**
     **(check the appropriate blank)**

____   in jail and still awaiting trial on pending criminal charges
____   serving a sentence as a result of a judgment of conviction
____   in jail for other reasons (*e.g.*, alleged probation violation, etc.)

**Explain:** _____

_____

**Please provide the date of your conviction or probation or parole revocation:**

_____

VI.  **Statement of Claim**

State <u>every</u> ground on which you claim that one or more of the Defendants violated your federal constitutional rights.  For example, if you have an excessive force claim and a denial of medical care claim, you must fill out a separate section for each different claim.  This section should be limited to the **facts** of your claim.

With respect to <u>each</u> claim, briefly describe the actions taken by each Defendant who you believe was involved in violating your rights.  Include also the names of other persons involved, dates and places.  Do not give any legal arguments or cite any cases or statutes.  (Use as much space as you need.  Attach extra sheets if necessary.)

<u>Claim Number #**6**</u>

**Type of Claim (for example:  excessive force, denial of medical care, etc.):**

Violation of due process of law: Can't get an interveiw with ARO, Law Library or get delinquent complaint and grievance forms addressed
Improper judgement and action in the diciplinary Appeal process

**Date of the Occurrence:** On or about July 1st

**Name of each Defendant involved:** Allan Stricklin, Warden Emsweller,

_____

_____

_____

**(A)  With respect to Defendant (Name)** Allan Stricklin , **describe the acts or omissions of <u>this</u> Defendant that form the basis for claim #1 and any harm caused by it.**

Ive requested interveiw with Admin strative Roveiw Officer Allan Stricklin for the purposes of his help with the preparation of my complaint with the federal court, use of the Law Library,

-28-

*and to try to get forms I've filed as far back as the first part of July addressed.*

**Are you suing this Defendant in his or her: (check the appropriate blank)**

_____ official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)

_____ personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

__✓__ both official and personal capacity

**If you are asserting an official capacity claim,** please describe the custom or policy that you believe caused the violation of your constitutional rights.

*Grievance policies on pages 5-7 of the entity handbook have failed causing a violation of due process*

**(B) With respect to Defendant (Name)** *Mr. Emsweller-Warden* **describe the acts or omissions of this Defendant that form the basis for claim #1 and any harm caused by it.**

*After informing Warden Emsweller that 7 other inmates in my barracks alone quit their A.M. kitchen jobs without notice and without displinarys, he affirmed the findings and sanctions of the DHC.*

**Are you suing this Defendant in his or her: (check the appropriate blank)**

_____ official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)

_____ personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

__✓__ both official and personal capacity

Omega Center
## REQUEST FOR INTERVIEW

Date: _8-16-20_                         Time: _3:30 p.m._

TO: _Mr. Stricklin_                     OFFICE: _Law Library_

FROM: _Alvin King_                      ADC#: _659717_
      (Resident's Name)

JOB ASSIGNMENT: _____        SUPERVISOR: _____

WORKING HOURS: _____ TO _____         BKS: _Admin, Housing (Fish Bowl)_

Give a detailed reason for the interview: _Im requesting the address to the_
_Arkansas Community Correction main headquarters._
_If ACC headquarters is not the Deputy Director of Residential_
_Services place of employment, I need his name and the_
_address of his place of employment in conjunction with_
_the ACC headquarters address._

Can this be handled at the Residential Supervisor's level or Counselors Level: YES _✓_ NO ___ If No, Why?

_Send me the first and last name of the Deputy Director of_
_Residential Services and the address to his place of employment if it_
_is not the same as ACC headquarters address._

_Alvin King_
Resident's Signature                                    Staff Signature

### ACTION TAKEN

_105 W. Capitol Ave_
_Little Rock AR. 72201_

Staff Signature                          Date

NOTE: ALL REQUESTS FOR INTERVIEW SLIPS MUST BE DROPPED IN THE REQUEST FOR
       INTERVIEW BOX.

A Note: Sgt. Anderson stated that the
Diplinary Hearing Committee because they were
continuing cases that should have been dismissed
and using cruel and unusal punishment (unnecessary
degrees of punishment for violations of miner or lesse
infractions as in my case). EX. A suspended or astive
sentence of Referral for transfer to ADC, 30 days
diplinary detention, and reduction of class from II
to IV, according to Sgt. Anderson, is a sentence necessary
for inmates who are fighting, a threat to staff, or
commit acts of sexual assault etc. In his opinion disobeying a
direct order that does not involue violence or the threat
of violence to other inmates or staff does not constitute
those types of sentences, suspended or active. Futhermore,
these sentences are within the Allowable Range of Sanctions
for Cardinal Rule Violations but not mandatory. He
stated that restrictions from Homewave, phone and
commissary were more suitable for that infraction
and even more restriction for a second violation of
non-violent nature.


On 9-3-20, I instigated another conversation with
Sgt. Harrison that revealed some more information about
the actions of

**If you are asserting an official capacity claim,** please describe the custom or policy that you believe caused the violation of your constitutional rights.

Customs and Policies in the handbook set forth and handed down by the entity failed and caused a violation of my rights.

(C) With respect to Defendant (Name) _Eddie Banks_____, describe the acts or omissions of **this** Defendant that form the basis for claim #1 and any harm caused by it.

I supplied Mr.Banks with the information significant enough for him to have reversed the decisions he made to affirm the findings and sanctions of the displinarys I received. He and the ARO office have the documented forms and information.

Are you suing **this** Defendant in his or her: (check the appropriate blank)

_____ official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)

_____ personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

__✓__ both official and personal capacity

**If you are asserting an official capacity claim,** please describe the custom or policy that you believe caused the violation of your constitutional rights.

Customs and Policies in relation to the Displinary Appeal Process failed causing a violation of my rights

Omega Center
## REQUEST FOR INTERVIEW

Date: 8-15-20

Time: 1:00 p.m.

TO: Mr. Stricklin

OFFICE: Law Library

FROM: Alvin King
(Resident's Name)

ADC#: 659717

JOB ASSIGNMENT: _____

SUPERVISOR: _____

WORKING HOURS: _____ TO _____

BKS: Admin. Housing (Fish Bowl)

Give a detailed reason for the interview:

Mr. Stricklin, with all due respect sir, I need an interview, your help and the Law Library to file this 1983 form.

Can this be handled at the Residential Supervisor's level or Counselors Level: YES ___ NO ___ If No, Why?

The wreckless and untimley manner in which some request and all Complaint and Grievance forms that I have filed are addressed makes them useless!

Alvin King
**Resident's Signature**

**Staff Signature**

### ACTION TAKEN

Mr. Stricklin didn't address this request properly and overlooked or ignored the primary reason for the request. He sent me a 1983 form back with this unaddressed request. The primary reason for the request was seeking an interview, his help and the help of the Law Library to prepare a 1983 form that I already possessed. The wreckless and untimely manner in which some request and all the Complaint and Grivance forms I've filed makes them useless. are addressed

Alvin King
8-21-20

**Staff Signature**          **Date**

NOTE: ALL REQUESTS FOR INTERVIEW SLIPS MUST BE DROPPED IN THE REQUEST FOR
INTERVIEW BOX.

**Arkansas Community Correction**

## COMPLAINT FORM FOR RESIDENTS

_____          _____          _____
Resident Name                              ACC #                Date

_____          _____
Unit Assignment                            Job Assignment

A resident must first attempt to informally resolve complaints, grievances, problems, or incidents by submitting a "Complaint Form for Residents" or discussing the matter with an appropriate person such as a counselor, the Residential Supervisor assigned to his/her housing area, or the Shift Supervisor on duty. Note, this step is NOT required for emergency grievances and allegations of sexual abuse; the Resident Grievance and Appeal Process policy addresses these situations.

**Describe the Problem. If appropriate include a recommended solution:**

The reason I chose to attempt internal resolve with the complaint form rather than discussing the problem with an appropriate person is so that I would have some proof that I did so. An appropriate person could say, "No, I didn't talk to him, or I don't remember talking to him." I file a complaint form for every claim and complaint I'm presenting as far back as the first of July. For whatever reason, the careless and untimely manner that the complaint and grievance forms are addressed makes them useless.

_____                              8-27-20
Signature of Resident                                          Date

### RESPONSE BY STAFF OR MEDICAL

_____          _____          _____
Date Received             Date Resident was Seen    Printed Name of Staff / Medical

Response / Action Taken:

### RESIDENT'S ASSESSMENT OF RESPONSE

[  ] My complaint has been resolved and/or, I no longer want to pursue this matter

[  ] My complaint has NOT been resolved and I want to pursue this matter (options include submitting a grievance)

_____
Resident's Signature

_____
Date Signed

Staff/Medical: Send response to the ARO within 3 business days
Copy: Resident

AD 15-08

**Arkansas Community Correction**
## GRIEVANCE FORM FOR RESIDENTS

For ARO/Staff Use:

\#

_____

Date Received (by ARO/Staff)

Name: _____ ACC Number: _____ Center: _____

Print Resident's Name

Housing Assignment: _____ Job Assignment: _____

Have you discussed this problem with a counselor or the Residential Supervisor assigned to your housing area or the Shift Supervisor on duty or attempted an informal resolution by submitting the "Complaint Form for Residents"?  ☐ YES  ☐ NO  ☐ N/A If so, attach that document or provide an explanation below. Note, if you are submitting a grievance about sexual abuse, or filing this as an emergency grievance, you are NOT required to discuss this with anyone beforehand and you are NOT required to first use the "Complaint Form for Residents." Also, if you are concerned that the normal submission method will result in an accused person seeing this, you may submit this to another staff member.

Describe the problem: _The steps for filing a grievance are much better understood for me, by looking at the format in the handbook which I did not receive when I arrived here nor did anyone explain the procedure to me. Getting an interview with the ARO Administrative Review Officer_

How can this situation be resolved? _who handles and addresses grievances has been impossible for me. He still has complaint forms that I filed the first part of July. I can't provide copies in the lawsuit because he still has them._

_Adrian King_                                                          8-22-20

Signature of Resident                                                  Date

IS THIS AN EMERGENCY SITUATION?  ☐ YES  ☐ NO

An emergency situation is one in which you may be subject to a substantial risk of physical harm. It should not be declared for ordinary problems that are not of a serious nature.

IF YES, WHY? (PROVIDE EXPLANATION):

_____

If you marked YES, you may give this completed form to any officer or department employee, who will sign the attached Emergency Receipt, give you the Receipt, and deliver the form without undue delay to the Grievance Officer, ARO, Center Supervisor, or, in their absence, the Assistant Center Supervisor; however, if the grievance alleges a substantial risk of imminent sexual abuse, it must be immediately forwarded by the person receiving it or the Grievance Officer to the Center Supervisor, Deputy Director of Residential Services, and Internal Affairs Administrator.

REPRISALS: IF YOU ARE HARMED OR THREATENED BECAUSE OF YOUR USE OF THE GRIEVANCE FORM, REPORT IT IMMEDIATELY TO THE CENTER SUPERVISOR.

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – –

RECEIPT FOR EMERGENCY SITUATIONS (To be completed by the Receiving Officer or Employee)

Staff Name (Print): _____          From (Resident's Name): _____

Date: _____          Time: _____

Signature of Receiving Staff Person

AD 15-08

**Claim Number #7.**

Type of Claim (for example: excessive force, denial of medical care, etc.):

Discrimination: I was not treated with equal treatment entering the general prison population in regard to class status and SEE ATTACHE

Date of the Occurrence: I arrived at ORCU on 9-8-20 from Omega Unit

Name of each Defendant involved: D.W. Culclager, Ms. Hossman

_____

_____

_____

(A) With respect to Defendant (Name) D.W. Culclager , describe the acts or omissions of <u>this</u> Defendant that form the basis for claim #3 and any harm caused by it.

D.W. Culclager is an Assistant or Deputy Warden, one of the heads of The ORCU Classification Committee and I feel is largely in part responsible for the discrimination against me regarding my class status in relation to the class status or class status outcome of the other 6 inmates in my group of 7 that came

Are you suing <u>this</u> Defendant in his or her: (check the appropriate blank)   SEE ATTACHE

_____ official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)

_____ personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

✓ both official and personal capacity

If you are asserting an official capacity claim, please describe the custom or policy that you believe caused the violation of your constitutional rights.

The Arkansas Department of Corrections' mission and vision statements and introduction on p.4 of their handbook are totally contradictory and non-compliant to the manner being demonstrated at their facility. Discrimination is a direct violation of an inmates constitutional rights and I'm sure

SEE ATTACHE

23.

Type of claim continued from p. 23

and housing assignment as most of the other 6 inmate in my group that came to the Ouachita River Correctio Unit (ORCU) from The Omega Technical Parole Violators (TPV) Unit. This claim directley relates back to claim #1 in this complaint because the cardinal or displinary in claim #1 is the reason or excuse that ADC is going to try to use for my class IV status and poor housing assigments 90 days after my last displinary. Today, 10-28-20, I should be class II ready to go up for parole and possibly catch a yearly November or December kick out, insteed I'm sitting in the poorest housing unit in the prison at class IV with a Transfer Elidgability date of 2-11-22. It takes 120 days to get from class IV back to class I. 60 days from class IV to class III, another 30 days from class III to class II, and another 30 days from class II to class I. I got or was found guilty of my last displinary on 7-28-20 and I still sit at class IV.

Continued from Claim #7 on p. 23

(A) to ORCU from the Omega (TPV) Unit.

I came to ORCU from Omega with 6 other inmates. All of them except for I came with displinaries and all but 2 out of the isolation unit. I happen to be the only one out of the 6 that came with displinaries that came out of general population. Omega is a small unit and small units are like or are similar to small towns, the business is pretty much known around the unit or town. I'm going to name all of the inmates so I can more clearley attempt to present this claim of discrimination. They are Sivils, Hendricks or Hendrix, Burchs or Burks, Hampton, Allen, and Giedon. Inmates Sivils, Hendricks, Burks, Hampton and Allen all received their displinarys for fighting. Mine was for quitting my kitchen job but had to be manipulated into disobeying a direct order for the officer to have a purpose for writing it. Inmate Giedon was the only one overtoback→

who came without disciplinary action. I feel it important to make all parties involved aware that inmates Hampton and Allen acted in such a disruptive and belligerent manner that they never made it out of the isolation unit and back into the general population at Omega. Furthermore, Hampton and Allen were taken before the Parole Board, just prior to our transfer and were given new 6 month violations on top of the ones they had already done because of their actions in the isolation unit at Omega.

As we were transferred to ORCU, we were put under a 21 day quarantine. During this 21 days, the first three days we underwent a series of evaluations by medical and mental health staff and we all learned of the class status we were entering the prison at from our present class IV status. The staff could see this information on the computer and relayed it to us. Inmates Hampton, Allen, and Giedon all entered at class II. All the rest came or entered with class IV status. With all due respect and without malicious, frivolous, or vexatious intent, Inmates Hampton, Allen, and Giedon are black and the Warden and Deputy Warden who is one of the leading heads of the classification committee are black. I can't say with concrete confidence, due to giving them benefit of the doubt, that the situation is as it seems but what I can say with that confidence is that our group of 7 was a special and separate situation from any other group and I believe whole heartedly that our individual situations had been studied and analyzed and our fate, regarding our unit assignment and our class status was decided before we ever arrived at the ORCU diagnostics Unit. The assistant Warden, Deputy Culclager, came to the back door upon our arrival and informed us that we wouldn't be allowed to enter through the back door for intake until the 58 from Pulaski County that had arrived earlier that day were clear of the hallway and locked down in their cells to ensure that we didn't get mixed in with that group. A few days later, Deputy Culclager visited us in a intake cells and informed us that we were likley to stay at ORCU and would stay together as a group as far as unit assignment wherever we went. I wrote detailed request to Deputy Culclager and Ms. Hossman the classification Manager during the week of 8-14-2 informing both of them of my circumstances and information concerning my disciplinary problems at Omega in an attempt to

this very situation but they didn't reply or respond and 60 days later still sit at class IV.

There is no rational or legal justification for the Classification Manager and all other appropiate members of the Classification Committee to allow 2 inmates out of a group of 6 that came from the same unit with the same circumstances to enter the general prison population with a higher class status and better housing assignment.

Official capacity claim continued from p. 23
discrimination free facilities is a policy that is proclaimed by them somewhere. I found them contradictory and non-compliant on the introductory page of their handbook.

Claim #7 continued from p. 24
(B) Ms. Hossman numerous requests about my class beginning the week of 9-14-20 and spoke with her personally and gave her my information during the week of 10-5-20 and have no information back from her and still sit at class IV on the day I should be moved to class II.

The Division of Community Correction (ACC, DCC) Omega Unit is merged with and owned by the Arkansas Department of Corrections. I was an ADC inmate, property of ADC at the Omega Unit and the fact that I was stuck or stranded there due to the corona virus or whatever their excuse may be is not my fault and I feel is irrelevant. The Omega Unit, which is merged with, owned by and a division of The Arkansas Department of Corrections uses cardinal rule violations that are presided over by a Displinary Hearing Committee that consists of the highest ranking staff members or officers inside the facility. ORCU and all other ADC units use Major Disciplnary which are presided over by Displinary Hearing Officers that work from outside the unit and don't know you

personally in an attempt to keep the displinary process free from discrimination. With all this being said, How can ADC with any legal justification use a double standard displinary process? The 6 inmates in my group of 7 that came here with displinary action should have either all been brought in at class I or all brought in at class II then 60 days later and displinary free been moved to class I. I have clearly been discriminated against. ADC followed right in the footsteps of their Division of Community Corrections

During a conversation with inmate Sivils on the afternoon of 10-29-20 I learned that he received his class III status two weeks prior to this conversation and he said his T.E. (Transfer Elidgeability) date moved back to him 6 months. This reverse movement of the T.E. date and the much better, more suitable, comfortable and desireable housing unit assignment are the most important reasons for this higher class status. Mr. Sivils came to ORCU from The Omega Unit in my group and entered the general prison population on the same day I did. On this day 10-30-20, which is classification day for this week, my name is not on the classification meeting list and I'm still class IV.

Alvin King #658917
10-30-20

(B) With respect to Defendant (Name) _Ms. Hossman_, describe the acts or omissions of <u>this</u> Defendant that form the basis for claim #3 and any harm caused by it.

Although Deputy Wardens Calclager and Ball
head up and run classification meetings,
Ms. Hossman is the classification manager and has
the authority to change an inmates class and
bring them up for classification meetings at the
appropriate and correct time. I wrote and sent

(SEE ATTACHMENT
to p. 23, claim
3 cont. from p.14

Are you suing <u>this</u> Defendant in his or her: (check the appropriate blank)

____    official capacity only (An official capacity claim is the same as suing the governmental entity this Defendant works for and requires proof that a custom or policy of the governmental entity caused the alleged violation.)

____    personal capacity only (A personal capacity claim is one that seeks to hold an individual liable for his own actions taken in the course of his duties.)

✓    both official and personal capacity

If you are asserting an official capacity claim, please describe the custom or policy that you believe caused the violation of your constitutional rights.

The Arkansas Department of Corrections' criteria
for promotion in class from class IV to class I is
120 disiplinary free. I have communicated or corresponded
to all the appropiate people, I'm 90 days (today)
disiplinary free and I still sit at class IV.

(C) With respect to Defendant (Name) _____, describe the acts or omissions of <u>this</u> Defendant that form the basis for claim #3 and any harm caused by it.

**If you are asserting an official capacity claim,** please describe the custom or policy that you believe caused the violation of your constitutional rights.

_____

_____

_____

_____

_____

_____

VII.    **Relief**

If you are seeking to recover damages from the named Defendants, check the appropriate blank or blanks below for the type or types of damages that you are seeking:

✓    Compensatory damages (designed to compensate persons for injuries, such as physical pain and suffering, etc., that are caused by the deprivation of constitutional rights)

✓    Punitive damages (designed to punish a Defendant for engaging in misconduct and deter a Defendant and others from engaging in such misconduct in the future)

State briefly below any other relief you are seeking in this action. Make no legal arguments. Cite no cases or statutes.

No amount of money or corrective punitive measure can rejuvenate the crippling affects of mental anguish and defamation of character produced by the injustice and inequality that has resulted from the unprofessional, careless actions of the Arkansas Dept. of Corrections and Arkansas Community Correction entities and their staff. Money and corrective measures

I declare under penalty of perjury (18 U.S.C. § 1621) that the foregoing is true and correct.

Executed this _28th_ day of _October_, 20 _20_.

_Alvin W. King_
**Printed Name of Plaintiff**

_Alvin W. King_
**Signature of Plaintiff**

-17-

Name: King, Alvin W.

ADC #: 659717C   PID #: 0054432

# Time Computation Summary

OTCS018A

Friday July 10, 2020 08:44:54 AM

Location: Omega Supe   Housing: BK0103-L        Class: II                    as of: 05/21/2020
Total
Sentence 5y 0m 0d    TE Date: 06/22/2021    Discharge   06/22/2025
Length:                                        Date:

### Time Computation Summary (1 - 8 of 8)

| Cmt | Offense | Fel. Cls | Docket Number | County | Sentence | | PE/TE | Jail Time |
|-----|---------|----------|---------------|--------|----------|---|-------|-----------|
| AB-001 | Commercial Burglary<br>Habitual Offender | C | CR-2016-125 | Ashley | 0y 60m 0d | | 1/3* | 60 |
| AB-002 | Commercial Burglary<br>Habitual Offender | C | CR-2016-125 | Ashley | 0y 0m 0d | CC | N/E* | 0 |
| AB-003 | Theft of Property >= $1,000 < $5,000<br>Habitual Offender | D | CR-2016-125 | Ashley | 0y 60m 0d | CC | 1/3* | 60 |
| AB-004 | Theft of Property >= $1,000 < $5,000<br>Habitual Offender | D | CR-2016-125 | Ashley | 0y 0m 0d | CC | N/E* | 0 |
| AC-001 | Commercial Burglary<br>Probation Revocation<br>Habitual Offender | C | CR-2016-125 | Ashley | 0y 60m 0d | CC | 1/3* | 0 |
| AC-002 | Theft of Property >= $1,000 < $5,000<br>Probation Revocation<br>Habitual Offender | D | CR-2016-125 | Ashley | 0y 60m 0d | CC | 1/3* | 0 |
| AC-003 | Poss Drug Paraphernalia Meth Cocaine<br>Habitual Offender | D | CR-2020-36 | Ashley | 0y 60m 0d | CC | 1/3* | 4 |
| AC-004 | Poss Cont Sub Sched I,II Meth Cocaine < 2g<br>Habitual Offender | D | CR-2020-68 | Ashley | 0y 60m 0d | CC | 1/3* | 27 |

31 days

Name: King, Alvin W.

ADC #: 659717C   PID #: 0054432

# Time Computation Summary

OTCS018A

Tuesday July 07, 2020 10:35:33 AM

| Location: | Omega Supe | Housing: | BK0103-L | Class: | II | | as of: | 05/21/2020 |
|---|---|---|---|---|---|---|---|---|
| Total Sentence Length: | 5y 0m 0d | TE Date: | 06/22/2021 | Discharge Date: | 06/22/2025 | | | |

## Time Computation Summary (1 - 8 of 8)

| Cmt | Offense | Fel. Cls | Docket Number | County | Sentence | | PE/TE | Jail Time |
|---|---|---|---|---|---|---|---|---|
| AB-001 | Commercial Burglary<br>Habitual Offender | C | CR-2016-125 | Ashley | 0y 60m 0d | | 1/3* | 60 |
| AB-002 | Commercial Burglary<br>Habitual Offender | C | CR-2016-125 | Ashley | 0y 0m 0d | CC | N/E* | 0 |
| AB-003 | Theft of Property >= $1,000<br>< $5,000<br>Habitual Offender | D | CR-2016-125 | Ashley | 0y 60m 0d | CC | 1/3* | 60 |
| AB-004 | Theft of Property >= $1,000<br>< $5,000<br>Habitual Offender | D | CR-2016-125 | Ashley | 0y 0m 0d | CC | N/E* | 0 |
| AC-001 | Commercial Burglary<br>Probation Revocation<br>Habitual Offender | C | CR-2016-125 | Ashley | 0y 60m 0d | CC | 1/3* | 0 |
| AC-002 | Theft of Property >= $1,000<br>< $5,000<br>Probation Revocation<br>Habitual Offender | D | CR-2016-125 | Ashley | 0y 60m 0d | CC | 1/3* | 0 |
| AC-003 | Poss Drug Paraphernalia Meth<br>Cocaine<br>Habitual Offender | D | CR-2020-36 | Ashley | 0y 60m 0d | CC | 1/3* | 4 |
| AC-004 | Poss Cont Sub Sched I,II Meth<br>Cocaine < 2g<br>Habitual Offender | D | CR-2020-68 | Ashley | 0y 60m 0d | CC | 1/3* | 27 |

**AR DOC**
**REPORT NO. OTCR118**

**ARKANSAS DEPARTMENT OF CORRECTION**
**TIME COMPUTATION CARD**

**PAGE:** 6 **of** 9
**PROCESSED:** 09/29/2020 09:24 AM
**REQUESTOR:** Jerrilyn L Moreno

**INMATE NAME:** King, Alvin Wesley

**ADC #:** 659717C

**LOCATION:** Ouachita River Correctional Unit

**HOUSING:** SN-B32

**CLASS:** IV

**OF:** 07/28/2020

You have been committed to the ADC to serve the following sentences. The release dates listed below are only a projection and include all good time which can be earned based on your current class. If all projected good time is not earned, these release dates will change.

| CMT. | OFFENSE | FEL CLS | DOCKET NUMBER | COUNTY NAME | TOTAL SENTENCE YY/MM/DD | | PE/TE | JAIL TIME |
|------|---------|---------|---------------|-------------|-------------------------|---|-------|-----------|
| AB-001 | Commercial Burglary Habitual Offender | C | CR-2016-125 | Ashley | 0y 60m 0d | IN | 1/3* | 60 |
| AB-002 | Commercial Burglary Habitual Offender | C | CR-2016-125 | Ashley | 0y 0m 0d | CC | N/E* | 0 |
| AB-003 | Theft of Property >= $1,000 < $5,000 Habitual Offender | D | CR-2016-125 | Ashley | 0y 60m 0d | CC | 1/3* | 60 |
| AB-004 | Theft of Property >= $1,000 < $5,000 Habitual Offender | D | CR-2016-125 | Ashley | 0y 0m 0d | CC | N/E* | 0 |
| AC-001 | Commercial Burglary Probation Revocation Habitual Offender | C | CR-2016-125 | Ashley | 0y 60m 0d | CC | 1/3* | 0 |
| AC-002 | Theft of Property >= $1,000 < $5,000 Probation Revocation Habitual Offender | D | CR-2016-125 | Ashley | 0y 60m 0d | CC | 1/3* | 0 |
| AC-003 | Poss Drug Paraphernalia Meth Cocaine Habitual Offender | D | CR-2020-36 | Ashley | 0y 60m 0d | CC | 1/3* | 4 |
| AC-004 | Poss Cont Sub Sched l,ll Meth Cocaine < 2g Habitual Offender | D | CR-2020-68 | Ashley | 0y 60m 0d | CC | 1/3* | 27 |

**TOTAL SENTENCE LENGTH** 5y 0m 0d

**RELEASE DATES:**    **TRANSFER ELIGIBILITY DATE:**    02/11/2022

**DISCHARGE DATE:**    06/22/2025

RECEIVED

**UNIT LEVEL GRIEVANCE FORM (Attachment I)**
Unit/Center _ORCU_

Unit - Disciplinary Matter

OCT 0 5 2020

Ouachita River Unit
Grievance Office

| FOR OFFICE USE ONLY |
|---|
| GRV. # _SNVD-00285_ |
| Date Received: _10/5/2_ |
| GRV. Code #: _400_ |

Name _Alvin King_

ADC# _659717_    Brks # _SNB #32_    Job Assignment _____

_9-26-20_ (Date) STEP ONE: Informal Resolution

_9-30-20_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: _This is about class and the fact that it coincides with a disciplinary is irrelevant to me. I've sent request to appropriate_

_____, (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm: emergency grievances are not for ordinary problems that are not of serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. In an Emergency, state why: _This is about class and I can 4 he lost that it may coincide with a disciplinary nor do I care. I've sent request to Deputy Warden and classification and_

Is this Grievance concerning Medical or Mental Health Services? _____ If yes, circle one: medical or mental response

**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how you were affected. (Please Print): _I came to the Arkansas Department of Corrections' Ouachita River Correctional Unit from Arkansas Department of Corrections' Division of Community Corrections Omega Unit on 9-8-20 (9-8-20). Two Cardinal Rule Violations and the findings, sanctions, and restrictions imposed by the Disciplinary Hearing Committee (DHC) came with me. One of those sanctions was a reduction in class from II to IV. I was not receiving any good time at Omega that would allow or permit progression in class status so how does the DHC at Omega reserve the right to take or reduce my class status. Furthermore, ORCU doesn't have Cardinal Rule Violations or a Disciplinary Hearing Committee, they have Major Disciplinary and a Disciplinary Hearing Officer. Unlike the DHC members at Omega, Disciplinary Hearing Officers at ORCU work from outside the Unit to try to keep discrimination issues clear from the Disciplinary Process. 3 of the inmates that came in my group from Omega, came with the same situations as me and came in at class II. With all this being said, I want to be moved to class II status immediately!!_

_Alvin King_                                    _9-26-20_
Inmate Signature                                  Date

_If you are harmed,threatened because of your use of the grievance process, report it immediately to the Warden or designee._

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**

This form was received on _9-30-20_ (date), and determined to be **Step One** and/or an Emergency Grievance _____ (Yes or No). This form was forwarded to medical or mental health? _____ (Yes or No). If yes, name of the person in that department receiving this form: _____ Date _____

_Cook_    9098L    _Cook_    _9-30-20_
PRINT STAFF NAME (PROBLEM SOLVER)    ID Number    Staff Signature    Date Received

Describe action taken to resolve complaint, including **dates**: _You cannot Grieve a Disciplinary. If you are wondering about your class. Fill out a request to the proper person or department_

_Cook_    _9-30-20_
Staff Signature & Date Returned        Inmate Signature & Date Received _Alvin King 9-30-20_

This form was received on _____ (date), pursuant to **Step Two**. Is it an Emergency? _____ (Yes or No).
Staff Who Received Step Two Grievance: _____ Date: _____
Action Taken: _____ (Forwarded to Grievance Officer/Warden/Other) Date: _____
If forwarded, provide name of person receiving this form: _____ Date: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**DISTRIBUTION: YELLOW & PINK** - Inmate Receipts; **BLUE** - Grievance Officer; **ORIGINAL** - Given back to Inmate after Completion of Step One and Step Two.

ADCF-15    www.aclcatalog.com

H.  Non-Grievable Issues – the following matters are not grievable:

   1.  Parole;
   2.  Release;
   3.  Transfer;
   4.  Job Assignments unless in conflict with medical restrictions;
   5.  Disciplinaries;
   6.  Anticipated events (i.e., events or activities which may or may not occur in the future);
   7.  Matters beyond the control of the Division of Correction, including issues controlled by State or Federal law or regulation;
   8.  Rejection of a Publication
   9.  A grievance submitted by an inmate on behalf of another inmate.

   Note: Claims of Retaliation, even if related to an issue referenced above, are Grievable.

I.  Available Remedies –if the facts asserted by the inmate would, if true, fall within the definition of Grievance, the matter shall be investigated, unless previously investigated. If the grievance is found to be with merit, the Division official designated to respond to the grievance shall have the authority, within the exercise of his or her discretion and consistent with the Division policies and the safety, security and good order of the facility, to offer actions by the Division designed to resolve the inmate's grievance. However, such available remedies do not include disciplinary action against an employee, contractor, or volunteer, nor monetary damages.

J.  Problem Solver – staff designated at each facility to serve as a contact for resolution of a problem or complaint, and specifically, to resolve Step One issues raised in this process. A list of these individuals will be posted in each housing unit. If the Problem Solver(s) is not available, any staff member of the rank of sergeant or above can collect Step One grievances (also referred to as "informal") and shall then act as the Problem Solver for that Step One grievance.

K.  Medical Department – Health Services Administrator (HSA) or designee.

L.  Mental Health Supervisor – the Division of Correction employee supervising the mental health staff and programs at the unit level.

IV.  **PROCEDURES:**

   The inmate grievance procedure is an internal administrative process for the resolution of complaints and the identification of potentially problematic management areas; however, it does not replace daily and routine communication between inmates and staff. Prior to filing a formal grievance (Step Two), an

<u>UNIT LEVEL GRIEVANCE FORM</u>(Attachment I)

Unit/Center _ORCU_

FOR OFFICE USE ONLY

GRV. # _____

Date Received: _____

GRV. Code #: _____

**Name** _Alvin King_

**ADC#**_659717_____ **Brks #**_Nb #32_ **Job Assignment** _____

_9-26-20_ (Date) STEP ONE: Informal Resolution

_9-30-20_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why:_This is about class and the fact that it coincides with disciplinary is irrelevant to me. I've sent request to appropriate_

_____, (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm: emergency grievances are not for ordinary problems that are not of serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. In an Emergency, state why:_This is about class and I can 4 be lost that it may coincide with a disciplinary as do I care. I've sent request to Deputy Warden and Classification, and_

_Is this Grievance concerning Medical or Mental Health Services? _____ If yes, circle one: medical or mental_ __response__
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how you were affected. (Please Print):_I came to the Arkansas Department of Corrections' Ouachita River Correctional Unit from Arkansas Department of Corrections' Division of Community Corrections Omega Unit on 9-8-20 (9-3-20). Two Cardinal Rule Violations and the findings, sanctions, and restrictions imposed by the Disciplinary Hearing Committee (OHC) came with me. One of those sanctions was a reduction in Class from II to IV. I was not receiving any good time at Omega that would allow or permit progression in class status so how does the OHC at Omega reserve the right to take or reduce my class status. Furthermore, ORCU doesn't have Cardinal Rule Violations or a Disciplinary Hearing Committee, they have Major Disciplinary and a Disciplinary Hearing Officer. Unlike the OHC members at Omega, Disciplinary Hearing Officers at ORCU work from outside the unit to try to keep discrimination issues clear from the Disciplinary Process. So the inmates that came in my group from Omega, came with the same situations as me and came in at class II. With all this being said, I want to be moved to Class II status immediately!!_

_Alvin King_                                  _9-26-20_

Inmate Signature                                  Date

_If you are harmed,threatened because of your use of the grievance process, report it immediately to the Warden or designee._

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**

This form was received on _____ (date), and determined to be **Step One** and/or an Emergency Grievance
_____ (Yes or No). This form was forwarded to medical or mental health? _____ (Yes or No). If yes, name of the person in that department receiving this form: _____ Date _____

PRINT STAFF NAME (PROBLEM SOLVER)    ID Number    Staff Signature                    Date Received
Describe action taken to resolve complaint, including **dates:** _____
_____
_____
_____
_____

Staff Signature & Date Returned _____ Inmate Signature & Date Received _____

This form was received on _____ (date), pursuant to **Step Two**. Is it an Emergency? _____ (Yes or No).
Staff Who Received Step Two Grievance: _____ Date: _____
Action Taken: _____ (Forwarded to Grievance Officer/Warden/Other) Date: _____
If forwarded, provide name of person receiving this form: _____ Date: _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**DISTRIBUTION: YELLOW & PINK** - Inmate Receipts; **BLUE** - Grievance Officer; **ORIGINAL** - Given back to Inmate after Completion of Step One and Step Two.

ADCF-15

## UNIT LEVEL GRIEVANCE FORM(Attachment I)

Unit/Center _ORCU_

Name _Alvin King_

ADC# _59717_    Brks # _2ND Day 32_    Job Assignment _____

<table>
<tr><td>FOR OFFICE USE ONLY</td></tr>
<tr><td>GRV. # _____</td></tr>
<tr><td>Date Received: _____</td></tr>
<tr><td>GRV. Code #: _____</td></tr>
</table>

_9-10-20_ (Date) STEP ONE: Informal Resolution

_9-24-20_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: _Step One wasn't addressed. I'm in_
_isolation under quarantine and unable to move about and drop Step Two in box in_ _a timely manner._

_____, (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm: emergency grievances are not for ordinary problems that are not of serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. In an Emergency, state why: _____

_Is this Grievance concerning Medical or Mental Health Services? _____ If yes, circle one:  medical or mental_
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected.  (Please Print): _9-8-20, 7 inmates came over to ORCU from_
_the Omega Unit. 6 of these 7 inmates came with disciplinary's and out of the hole or isolation._
_2 of these, Hampton and Allen are black and the other 4, King, Sivils, Hendricks_
_and Burks are white. The black inmates Hampton and Allen came in here at_
_class II, and the white inmates King, Sivils, Hendricks and Burks were_
_brought in here at class II. The other 7th inmate whose name I do not_
_know is also black and also came in at class II. There is no excuse or_
_justification for this matter as far as I'm concerned and I see it_
_as plain and simple racial discrimination. I have been discriminated_
_against and my constitutional rights have been violated._
_If I'm not brought to class II status immediately like the black_
_inmates are, I will let ADC be liable officially in a federal_
_complaint and let the federal judge determine who and who can be_
_held personally liable._

_Alvin King_
_____    _9-10-20_    _____
Inmate Signature                                  Date

_If you are harmed,threatened because of your use of the grievance process, report it immediately to the Warden or designee._

### THIS SECTION TO BE FILLED OUT BY STAFF ONLY

This form was received on _____ (date), and determined to be **Step One** and/or an Emergency Grievance _____ (Yes or No).  This form was forwarded to medical or mental health? _____ (Yes or No).  If yes, name of the person in that department receiving this form: _____ Date _____

_____    _____    _____    _____
PRINT STAFF NAME (PROBLEM SOLVER)    ID Number    Staff Signature    Date Received

Describe action taken to resolve complaint, including **dates**: _____
_____
_____
_____

Staff Signature & Date Returned _____    Inmate Signature & Date Received _____

This form was received on _____ (date), pursuant to **Step Two**.  Is it an Emergency? _____ (Yes or No).
Staff Who Received Step Two Grievance: _____ Date: _____
Action Taken: _____ (Forwarded to Grievance Officer/Warden/Other) Date: _____
If forwarded, provide name of person receiving this form: _____ Date: _____

**DISTRIBUTION: YELLOW & PINK** - Inmate Receipts; **BLUE** - Grievance Officer; **ORIGINAL** - Given back to Inmate after Completion of Step One and Step Two.

ADCF-15    www.sckatalog.com

## Inmate Request Form

This form is to be used by inmates to contact staff with requests on issues they may have. This step should be used before completing an Informal Resolution or Grievance. This is the Ouachita River Correctional Unit In-House Form.

| Name: Alvin King | ADC #: 659717 | BKS: Intake #/20 | Date: 9-8-20 |
|---|---|---|---|

Circle the Department you want your request directed to.

| Business Office | Visitation / Inmate Phones | Medical | Property |
|---|---|---|---|
| (Records) | Classification | Mail Room | Law Library |
| Commissary | Chaplain | Field Office | Laundry |
| Mental Health | Mental Health | Parole | Warden's Office |
| Deputy Warden's Office | Other: | | |

Staff Directed to: Records

Give detailed reason for request: I request a copy of my time card please

Have you talked to any staff about your request? ____ Yes  ✓ No

If your answer is "yes", who did you talk to about this request and when? _____

| Inmate's Signature: Alvin King | Date: 9-8-20 |
|---|---|
| Staff Responding: | Date: |

I have reviewed your request and here is my finding:

I am referring this request to: _____

I am considering this issue: ____ Resolved ____ Not Resolved

9/9/20

Staff Member's Signature & Date

AR DOC
REPORT NO. OTCR118

ARKANSAS DEPARTMENT OF CORRECTION
TIME COMPUTATION CARD

PAGE: 8 of 11
PROCESSED: 09/09/2020 03:00 PM
REQUESTOR: Lisha G Taylor

| INMATE NAME: | King, Alvin Wesley | ADC #: 659717C |
|---|---|---|

| LOCATION: | Ouachita River Correctional Unit | HOUSING: SN-B20 | CLASS: IV | OF: 07/28/2020 |
|---|---|---|---|---|

You have been committed to the ADC to serve the following sentences. The release dates listed below are only a projection and include all good time which can be earned based on your current class. If all projected good time is not earned, these release dates will change.

| CMT. | OFFENSE | FEL CLS | DOCKET NUMBER | COUNTY NAME | TOTAL SENTENCE YY/MM/DD | | PE/TE | JAIL TIME |
|---|---|---|---|---|---|---|---|---|
| AB-001 | Commercial Burglary Habitual Offender * | C | CR-2016-125 | Ashley | 0y 60m 0d | IN | 1/3* | 60 |
| AB-002 | Commercial Burglary Habitual Offender | C | CR-2016-125 | Ashley | 0y 0m 0d | CC | N/E* | 0 |
| AB-003 | Theft of Property >= $1,000 < $5,000 Habitual Offender | D | CR-2016-125 | Ashley | 0y 60m 0d | CC | 1/3* | 60 |
| AB-004 | Theft of Property >= $1,000 < $5,000 Habitual Offender | D | CR-2016-125 | Ashley | 0y 0m 0d | CC | N/E* | 0 |
| AC-001 | Commercial Burglary Probation Revocation Habitual Offender | C | CR-2016-125 | Ashley | 0y 60m 0d | CC | 1/3* | 0 |
| AC-002 | Theft of Property >= $1,000 < $5,000 Probation Revocation Habitual Offender | D | CR-2016-125 | Ashley | 0y 60m 0d | CC | 1/3* | 0 |
| AC-003 | Poss Drug Paraphernalia Meth Cocaine Habitual Offender | D | CR-2020-36 | Ashley | 0y 60m 0d | CC | 1/3* | 4 |
| AC-004 | Poss Cont Sub Sched I,II Meth Cocaine < 2g Habitual Offender | D | CR-2020-68 | Ashley | 0y 60m 0d | CC | 1/3* | 27 |

**TOTAL SENTENCE LENGTH** 5y 0m 0d

| RELEASE DATES: | TRANSFER ELIGIBILITY DATE: | 02/11/2022 |
|---|---|---|
| | DISCHARGE DATE: | 06/22/2025 |

## Inmate Request Form

This form is to be used by inmates to contact staff with requests on issues they may have. This step should be used before completing an Informal Resolution or Grievance. This is the Ouachita River Correctional Unit In-House Form.

| Name: Alvin N. King | ADC #: 659717 | BKS: 2-04C | Date: 10-7-20 |
|---|---|---|---|

Circle the Department you want your request directed to.

| Business Office | Visitation / Inmate Phones | Medical | Property |
|---|---|---|---|
| Records | Classification | Mail Room | Law Library |
| Commissary | Chaplain | Field Office | Laundry |
| Mental Health | Mental Health | Parole | Warden's Office |
| Deputy Warden's Office | Other: DRO | | |

Staff Directed to: DRO

Give detailed reason for request: With all due respect mam, I talked to you at my barracks door about my class and you said you would check into it for me. It has been 72 days today since I was found guilty of a CR 12 while at the Omega TPU Unit and I'm still class II. Please Help me If you can.

Have you talked to any staff about your request?  ✓ Yes  ___ No  Was before Classificatio committtee on 9-30-20

If your answer is "yes", who did you talk to about this request and when? Sent request to Classificatio and Deputy Warden durin weeks of 9-16, 10-1, 10-7

| Inmate's Signature: Alvin King | Date: 10-7-20 |
|---|---|
| Staff Responding: Sgt. Slayton | Date: 10/9/20 |

I have reviewd your request and here is my finding: It still shows that you are a class IV inmate. If classification isn't willing to give your class back there isn't much you can do other then wait.

I am referring this request to: _____

I am considering this issue:  ✗ Resolved  ___ Not Resolved

X _____ 10/9/20
Staff Member's Signature & Date

Omega Center

## REQUEST FOR INTERVIEW

Date: 8-3-20                         Time: 1:00 p.m.

TO: Ms. Woods or Ms. Broum         OFFICE: Records

FROM: Alvin King                    ADC#: 659717
       **(Resident's Name)**

JOB ASSIGNMENT: _____     SUPERVISOR: _____

WORKING HOURS: _____ TO _____   BKS: Seg. K

Give a detailed reason for the interview: A new 60 month sentence was finalized for me
on June 23 2020. In a previous request to Records or I.PO, I don't
remember exactly which, I was informed that I wouldn't and couldn't
progress from class II to I until I got to ADC. With that being said, how
can my class be reduced from II to IV if it can't progress from II to
I. I would like to know where do I go from here and possibly
when and when do I get back to class II.

_____

_____

Can this be handled at the Residential Supervisor's level or Counselors Level: YES ✓ NO____ If No, Why?

Tell me where I go from here and possibly when and when
do I get back to Class II.

Alvin King
**Resident's Signature**                    **Staff Signature**

### ACTION TAKEN

You were reduced to a Class II when you
was sentenced to new time. Once you are
transferred to ADC your Class will change
as long as you remain on good behavior
Status.

_____           8.4.20
**Staff Signature**                        **Date**

**NOTE: ALL REQUESTS FOR INTERVIEW SLIPS MUST BE DROPPED IN THE REQUEST FOR
       INTERVIEW BOX.**

CC: Resident's File
     File

Inmate Request Form

This form is to be used by inmates to contact staff with requests on issues they may have.
This step should be used before completing an Informal resolution or Grievance. You
should allow five working days to receive a response to your request. This is the Ouachita
River Correctional Unit in-house form.

Name: _Alvin King_    ADC#_659217_ Brks:_2-off_ Date:_10-7-20_

My request is directed to the following Department: (Circle one):

Business Office    Visitation    Medical    Property    Records    Classification

Mail Room    Law Library    Commissary    Chaplain    Field Office    Laundry

Phone LIST    Mental Health    Parole    Library    Program Coordinator

Warden's Office    (Deputy Warden's Office)    Other: _____

Staff directed to: _Deputy Culclager_    Office: _Deputy Warden_

Give a detailed reason for request: _With all due respect sir, I_
_would like to be moved to class III status._
_It's been about 77 days since my cardinal_
_rule violation while at the Omega Unit. I've_
_wrote request to Classification last week_
_and this week. I also wrote request to your office and_
_Classification during week of 9-16-20 explaining the circumstance,_
Have you talked to any staff about your request? (Yes)  No, if "Yes", who did you talk to and _regarding the Cardinal rule violation._
when? _Sent request to Classification and Deputy Warden during week_
_of 9-16-20_

Inmate's Signature: _Alvin King_    Date: _10-7-20_

Staff Responding:_____    Date:_____

I have reviewed your request and here is my finding: _You will have to wait until_
~~But~~ _it is time for you to go up for Class III._

_At this point, I was_
_eligible for class III status_
_This statement by Culclager_
_was a deliberate diversion. 120_
_days from class III to class I. My_
I am referring this to: _____    _disciplinary date is 7-28-20 as_
_shown on my time computation_
I am considering this issue: ☒Resolved ☐ Not Resolved    _card._

RECEIVED
OCT 0 7 2020
BY: _Dw Culclager_

Staff Member's Signature

_Alvin King_
_#659217  10-28-20_

Omega Center
## REQUEST FOR INTERVIEW

Date: 8-28-20                        Time: 6:30 p.m.

TO: Ms. Owens                        OFFICE: Records

FROM: Alvin King                     ADC#: 659717
(Resident's Name)

JOB ASSIGNMENT: _____       SUPERVISOR: _____

WORKING HOURS: _____ TO _____      BKS: Seg, C4

Give a detailed reason for the interview:

Ms. Owens, can I please get a copy of my time card, if
it shows me back at class II and my T.E. date moved
back. As of 8-27-20 I'm 30 days displinary free.

Can this be handled at the Residential Supervisor's level or Counselors Level: YES____ NO____ If No, Why?

_Alvin King_
Resident's Signature                              Staff Signature

### ACTION TAKEN

Your class will not change until you are
transferred to ADC.

P                        9.1.20
Staff Signature              Date

NOTE: ALL REQUESTS FOR INTERVIEW SLIPS MUST BE DROPPED IN THE REQUEST FOR
INTERVIEW BOX.

| AR DOC | ARKANSAS DEPARTMENT OF CORRECTION | PAGE: 3 of 4 |
| REPORT NO. OTCR118 | TIME COMPUTATION CARD | PROCESSED: 10/21/2020 10:17 AM |
| | | REQUESTOR: Jasmine Lindsey Christi |

**INMATE NAME:** King, Alvin Wesley                    8.5 days   ADC #: 659717C

**LOCATION:** Ouachita River Correctional Unit         **HOUSING:** BK02204L    **CLASS:** IV        **OF:** 07/28/2020

You have been committed to the ADC to serve the following sentences. The release dates listed below are only a projection and include all good time which can be earned based on your current class. If all projected good time is not earned, these release dates will change.

| CMT. | OFFENSE | FEL CLS | DOCKET NUMBER | COUNTY NAME | TOTAL SENTENCE YY/MM/DD | | PE/TE | JAIL TIME |
|------|---------|---------|---------------|-------------|-------------------------|---|-------|-----------|
| AB-001 | Commercial Burglary Habitual Offender | C | CR-2016-125 | Ashley | 0y 60m 0d | IN | 1/3* | 60 |
| AB-002 | Commercial Burglary Habitual Offender | C | CR-2016-125 | Ashley | 0y 0m 0d | CC | N/E* | 0 |
| AB-003 | Theft of Property >= $1,000 < $5,000 Habitual Offender | D | CR-2016-125 | Ashley | 0y 60m 0d | CC | 1/3* | 60 |
| AB-004 | Theft of Property >= $1,000 < $5,000 Habitual Offender | D | CR-2016-125 | Ashley | 0y 0m 0d | CC | N/E* | 0 |
| AC-001 | Commercial Burglary Probation Revocation Habitual Offender | C | CR-2016-125 | Ashley | 0y 60m 0d | CC | 1/3* | 0 |
| AC-002 | Theft of Property >= $1,000 < $5,000 Probation Revocation Habitual Offender | D | CR-2016-125 | Ashley | 0y 60m 0d | CC | 1/3* | 0 |
| AC-003 | Poss Drug Paraphernalia Meth Cocaine Habitual Offender | D | CR-2020-36 | Ashley | 0y 60m 0d | CC | 1/3* | 4 |
| AC-004 | Poss Cont Sub Sched l,ll Meth Cocaine < 2g Habitual Offender | D | CR-2020-68 | Ashley | 0y 60m 0d | CC | 1/3* | 27 |

**TOTAL SENTENCE LENGTH** 5y 0m 0d

**RELEASE DATES:**    **TRANSFER ELIGIBILITY DATE:**    02/11/2022

**DISCHARGE DATE:**    06/22/2025



# Arkansas Department of Corrections' Division of Community Corrections Omega



**Resident Handbook**

**for the**

**Technical Violator Program**

as of June 4, 2020 ← I arrived here on 5-21-20
Alvin W. King
#659717
8-24-20

1

**Religious Services** ........................................................................................................ 27

**Residents Access to Staff** ............................................................................................. 27

**Law Library** ..................................................................................................................... 27

**Central Supply** ............................................................................................................... 27

**Records Department** ..................................................................................................... 28

**Letters of Incarceration** .............................................................................................. 28

**Prison Rape Elimination Act** ..................................................................................... 28

     PREA CONTACT NUMBERS ARE: *9123 or 1-800-553-3820

4. To be treated with respect and dignity as a human being

5. To have private visits from a lawyer or clergyman in accordance with DCC Policy.

6. To correspond by mail with officials of the Department of Behavioral Health, a lawyer or a court as permitted by DCC Policy and Procedure.

7. To medical care and treatment in accordance with DCC provisions.

8. To safe and clean housing as provided by DCC.

9. To attend religious services in accordance with DCC Policy and Procedures.

10. To have examinations by doctors as provided by DCC Policy and procedures.

11. To be evaluated and cared for in the least restrictive treatment environments.

12. To have nourishing, well-balanced meals as provided by DCC.

13. To work in accordance with the DCC Policy and Procedures.

14. To have the same legal rights and responsibilities as any other residents.

15. To not be denied admission or services because of color, race, sex, creed, marital status, national origin, handicap, or age.

16. To be free from verbal or physical abuse.

17. To receive an impartial review of alleged violation of rights.

In accordance with the Policy and Procedures of the DCC, the following rights and privileges may be limited:

a. Wearing own clothes and use of personal articles.

b. Sending and receiving mail.

c. Use of canteen or purchasing services.

d. To have visitors.

e. To use the telephone.

f. To have physical exercise and outdoor recreation.

g. To have access to current newspapers, magazines, radio, and television programming.

h. To be free from chemical/physical restraints, seclusion, or isolation.

### Complaints and Grievances

#### Overview:

1. When a resident has a complaint, a grievance is not appropriate unless there is clear evidence of abuse of authority or discrimination.

2. If the resident has a complaint pertaining to another resident, they may notify Security or SOD.

3. The normal grievance process that is described in the Administrative Directive titled Resident Grievance and Appeal Process will be followed.

#### Policy

Residents must have the opportunity to initiate grievance procedure on any condition or action within the program without being subject to any adverse action. However, complaints pertaining to treatment sanctions or "learning experiences" cannot be grieved.

sign the attached emergency receipt, give the receipt to the resident and deliver it without undue delay to the Grievance Officer/Designee or in his/her absence, the highest center authority present

3. If a grievance has been determined to be an emergency, it shall be given priority at all levels of review in order to ensure an immediate solution.

4. The Grievance Officer/Designee shall, within (30) calendar days respond in writing to the grievant, unless the time period to respond had been extended. All written responses shall include a well-reasoned response and explanation that the grievant is entitled to appeal and instructions on how to appeal.

## **Clarification of Exceptions to Resident Lines of Communication**

Resident lines of communication are not intended to restrict casual conversation or impede communication during emergencies. Exceptions to resident lines of communication may be made when certain situations exist as listed below. Then, direct discussion with staff is acceptable and expected. On the other hand, if a resident believes a non-emergency situation cannot be appropriately resolved through normal lines of communication, a Request for Interview is appropriate. A Request for Interview is a note to staff identifying an issue or concern for review and appropriate staff action. Examples of situations that may require going outside of established lines of communication include the following:

1. Emergencies (residents are authorized to notify the nearest staff member and others as appropriate for the situation.).

2. When a resident requires medical care (the established process for obtaining medical services is used).

3. When a resident has an issue appropriate for the grievance process, he or she can follow grievance procedures.

4. The following are appropriate situations for a "Resident Request for Interview":

   a. When a resident has a significant concern, which was taken through the lines of communication, but no action or response was provided within 48 hours not including weekends and holidays.

   b. When a resident believes the normal lines of communication would compromise their privacy or that of another (Example: A resident confided with another resident about serious depression, considering suicide or concern about a disease. The resident learning of the situation could appropriately bring this to their counselor's or other appropriate staff member's attention.)

## **People you need to know**

1. Center Supervisor- Mr. Emsweller
2. Assistant Center Supervisor – Mr. White Walter White
3. Chief Security Officer- Major Ruh Andrew Ruh
4. Treatment Supervisor- Mrs. Robertson Carol Robertson
5. Treatment Coordinator- Ms. Bishop and Mrs. Rayburn
6. SOD (Staff on Duty) Lt. Satterwhite and Lt. Baker
7. ARO (Administrative Review Officer)- Mr. Stricklin Allan Stricklin
8. Records Supervisor- Ms. Owens
9. IRO (Institutional Release Officer)- Ms. Hrdlicka
10. Chaplain- Chaplin Mead

7

### CR 08 - Residents must not possess or use controlled substances or alcohol.

The possession, concealment, or use of any mind-altering substances not prescribed by a physician including alcoholic beverages and unauthorized possession or use of prescription drugs.

### CR 09 - Residents must not refuse to submit to substance abuse testing; residents must not attempt to foil a drug or alcohol screening test.

The refusal to submit to a test administered in accordance with agency guidance on substance abuse testing. Note: Attempting to foil or defeat a drug or alcohol test is a violation of law.

### CR 10 - Residents must not violate laws.

Any act or acts defined as felonies or misdemeanors by the State of Arkansas and Federal government. NOTE: Violations of law are subject to criminal prosecution, regardless of disciplinary action taken by the DCC.

### CR 11 - Residents must not engage in gang activity and/or representation.

The recognized representation whether real or not, of any gang affiliation through use of known gang signs, dress, mannerisms, etc.

### CR 12 - Residents must not refuse to follow orders by staff.

The refusal by a resident to follow an order given by a staff member. (See also House Rule 3)

### CR 13 - Residents must not tamper with safety or security devices.

The tampering with, adjusting, modifying or attempting to modify any mechanical device used for fire safety, security or communications purposes (e.g., fire extinguishers, sprinkler systems, locks, alarms, smoke detectors).

### CR 14 - Residents must not engage in repeated violations constituting non-compliance.

The refusal to participate in programs, complete learning experiences and comply with treatment instructions. Obtaining numerous minor violations of major or house rules in non-compliance with community values and norms of behavior.

### CR 15 - Residents must not submit false or misleading official statements.

Knowingly giving or filing statements, which allege facts, which are not true, or failing to state the full facts, deliberately intending to mislead staff. (See also Major Rule 2 regarding unofficial statements)

### CR 16 - Residents must not threaten, intimidate, or abuse a staff member, including contract or volunteer staff.

Threats, intimidation, or abuse of a staff member through actions, gestures, or language. (See also Cardinal Rule 17)

### CR 17 - Residents must not threaten, intimidate, or abuse a non-staff member.

Threats, intimidation, or abuse of a non-staff member through actions, gestures, or language. (See also Cardinal Rule 16)

### CR 18 - Residents must not evade detection or actively attempt to sabotage the taking of a count.

Hiding, creating a significant diversion, or disruption during the taking of a count. (See also House Rules 1c, 6, 8, and 9)

### MR 04 - Resident must not engage in a fight.

The resident will not physically attack a person or, if defending him/herself, continue the fight after his/her assailant is subdued. (See Cardinal Rules 03 and 04 for fights that constitute assault or battery.)

### MR 05 - Trafficking or Trading.

Residents must not sell, loan with the intent of gaining interest in any manner, or trade as in a barter system.

### MR 06 - Failure to Wear Appropriate Identification.

Residents are to wear their correct ID badge at all times when not in their assigned sleeping area.

### MR 07 - No Gambling.

Residents must not engage in any activity for the purpose of betting or gambling for money, favors, privileges, commissary products, or other rewards.

### MR 08 - Failure to Follow Visitation Rules and Guidelines.

Residents will follow all rules for visitation at all times.

### MR 09 - Giving Inappropriate Feedback to Staff.

Residents must not respond to staff direction in an inappropriate manner by using profanity, sarcasm, arrogance, and/or snide remarks or making inappropriate gestures to staff. (See also Cardinal Rule CR 16)

### House Rules

### HR 01 - Be Professional.

- Residents must demonstrate professionalism as described below:
  - Have Courteous, Patient, and Respectful Attitudes. Residents must be patient, courteous, and respectful when dealing with others. Residents must be tactful when performing duties, control his or her temper, exercise patience, and not become involved in arguments, even in the face of provocation.
  - Use Appropriate Gestures and language. Residents must not use gestures or language that is profane, offensive, rude, sassy, insulting, or disrespectful. (see Cardinal Rules CR 06 regarding official statements, CR 16 regarding threats/abuse directed toward staff, CR 17 regarding threats/abuse directed towards non-staff, and Major Rule 9 about responding to staff direction)
  - Act Appropriately. Residents must not engage in horseplay, fighting, practical jokes, or other conduct that endangers the safety of employees, offenders, or others. (see Cardinal Rules 3 regarding assault, 4 regarding fights, 22 regarding injurious behavior and Major Rule 10 distinguished from this rule by the degree of severity)

### HR 02 - Be Punctual.

- Residents must be on time in accordance with schedules and instructions.

### HR 03 - Obey Written Rules, Policies and Procedures.

- Residents must not commit or omit acts which he or she knows, or should know, would constitute a violation of any written rules, regulations, procedures, directives, memorandums, or orders of the Arkansas Division of Community Correction

4. Residents are prohibited from being employed or having as an approved sponsor for furlough and/or visitation purposes the following individuals:

   a. Employees of the Arkansas Department of Correction.

   b. An individual who is connected professionally with a CCC.

   c. Volunteers and/or contract employees, including any council or committees that are associated with any CCC.

   d. With the exception of an immediate family member.

5. A resident will not wear any gang-related colors, use gang-related hand signals, or demonstrate/participate in any conduct, which is gang-related. Participation in "gang activity" or other disorderly conduct is strictly prohibited. Any violations of this rule will result in appropriate disciplinary action, which may include a recommendation that the resident be removed from the Center.

6. All Arkansas Department of Corrections are tobacco free. **The Use or possession of any tobacco product(s), to include matches, or cigarette lighters by a resident is strictly prohibited.**

7. A resident, who has been approved to receive an item of personal property from a source outside the Center, must receive written approval from the Center Supervisor or his/her designee, prior to the item being received at the Center.

8. When approved, the resident is responsible for providing a copy of the written authorization form to the individual that is providing/purchasing the item(s) of personal property. The personal property must be sent to the resident, through the U.S. Mail, and must contain a copy of the written authorization, which indicates the resident did receive prior approval to receive the personal property item.

   Any package, with the exception of release clothing, received without the written authorization form, will be rejected and returned to the sender at the expense of the resident. Packages may also be rejected if they are found to contain addition items that have not been pre-approved.

10. Residents must not alter, deface, or damage any state issued property.

11. Residents are prohibited from possessing any material that is obscene in nature, contains nude photographs, pornographic magazines/books, or other materials, which depict or describe sexual acts.

12. Any resident who absconds (escapes) from the custody of the DCC Center, must forfeit all personal property, thirty (30) days after leaving the facility.

13. Residents must not possess contraband. Contraband is described as anything that is not issued thru regular channels (i.e. supply, intake upon admission to facility, etc.) Purchased in the commissary, items that have been altered or changed, or excessive quantities of an item (books, magazines, newspapers, etc.) that exceeds allowable limits. Residents are allowed to have the following: 5 pictures, 25 letters, 5 books (including The Big Book, and religious text.)

14. Residents are prohibited from entering into financial obligations while incarcerated.

15. Residents are prohibited from entering into any contract with another resident and/or staff member.

16. Residents may not possess articles of civilian clothing.

7. You will use the same PIN# you used when in DOC whether it was your Social Security Number or your ADC#. If your PIN is not working, fill out a Resident Phone Trouble Reporting Sheet and submit to phone personnel.

8. When submitting any numbers, you must have the name and address for that number. Residents are only allowed to add one number per person on your phone list. Residents cannot put a cell phone number, home number, etc..... Only one number per person.

9. You are allowed 10 numbers maximum on your calling list. This does not include attorney numbers or the Rape Crisis Number. All calls except those to an attorney are subject to recording and monitoring.

10. **Do not add the attorney's number at the top with your ten (10) numbers.** There is a place on the 'phone request' sheet, at the bottom, to add attorney numbers. A letter from your attorney, giving us permission to add their number to your calling list, must be attached to this 'phone request' sheet before it will be added.
Before an attorney's number can be added to a calling list, the attorney must send a letter on their letterhead to the Omega TVC unit stating that they are your attorney and that we have their permission to add their number to your calling list. Without this letter, your attorney's number will not be added. The attorney can send the letter to you or directly to the unit. **Telephone calls to attorneys will be at the expense of the attorney being called.** The letter can also be faxed to the attention of the administrative personnel in charge of phones at 501-467-3052

11. You are only allowed two (2) phone request forms while you are here at Omega, therefore you can only add/ delete/ change numbers twice while you are here. Keep a copy of your numbers so that you know what numbers you added to your phone account.

12. You are not allowed to put certain numbers on your calling list (i.e. judges, prosecutors, family of victims,' persons on probation or parole, parole officers, current or former employees, contract agents, or places of business). **If you attempt to add a felon, probationer and/or parolee telephone number(s) to your list, you will be written a Cardinal Rule Violation or a Booking Slip. If you try to add a number to another resident's calling list, you and the other   resident will be written a disciplinary. THIS IS A DIRECT ORDER.** You are not to discuss another offender in phone conversations. Attempting to give messages or receive information for another offender will result in disciplinary action for both of you.

13. Attorney numbers: You must have a letter from your attorney, on attorney letterhead, requesting his/her number be placed on your calling list. Only the numbers submitted in the attorney letter will be added. If you have already submitted a number and that number is not working fill out a Resident Phone Trouble Reporting Sheet.

14. When you fill out trouble forms, you are to put your name and ADC number at the top, and the barracks number in the "Location of Phone" section. State your problem and / or the recorded message you are hearing in the Problem section. Report all problems to the administrative personnel handling the telephones. DO NOT ask your family to call. I will communicate with you and only you to resolve phone issue.

15. Dialing Instructions: Press 1 for English, then dial 0 + area code + phone number, dial PIN

1. All visitors for a resident (except attorneys and spiritual advisors) must submit a "Visitor Application" form, have an approval inquiry completed, and be placed on the resident's approved visitor list before they can visit.

2. Residents are responsible for mailing "Visitor Application" form(s) to people who wish to visit. A separate application must be completed for each visitor, including children.

3. All visitors age 12 and older must show valid photo identification. Children under 12 may be required to show photo identification or a birth certificate.
A maximum of twenty (20) approved persons may be placed on any Resident's visitation list. Once this number is reached, the Resident cannot add another visitor without removing one from the existing list. Four visitors are allowed during any one visit including children, however, if biological children of Resident allowed to visit exceeds the limit of four (4) visitors, then only two (2) adult visitors may accompany them.

4. Approved visitor(s) may visit with a resident during the time/date as indicated on the visitation schedule. Visitors may only visit the resident they were granted permission to visit.

5. The visitation schedule will be posted at each facility

6. Special visits between regularly scheduled visitation times may be allowed in certain circumstances when approved by the Center Supervisor for situations such as:
   * complying with court orders,
   * signing documents,
   * when requested by the Department of Human Services,
   * accommodating a visitor who lives more than 300 miles from the center,
   * accommodating ministers, job interviewers, housing representatives, or other representatives assisting the resident with transition back into the community.

Items brought into the visiting room by a visitor will be restricted to the following items: One clear small change purse (that can be easily searched)

Each adult visitor (18 and above) will be allowed to bring in $40.00. In cases where a single visitor is escorting children, then that visitor will be permitted to bring in up to $60.00, two (2) diapers (with infant), clear baby bottles and baby food (2 jars); No extra items are to be brought into the facility.

Residents must have their ID during visitation

## Visitation Rules and Conditions

1. Visitors must complete an application and be approved to visit a resident in an DCC center. The number of persons visiting a resident at one time may be limited.

2. Children under 18 must be accompanied by an adult. All visitors age 15 and older must show valid photo identification. Children under 15 may be required to show photo identification or a birth certificate.

3. All visitors must follow staff instructions, and comply with the visitation policy, procedures, and rules. A visitor may be denied access if the security, order, and discipline of the center may be compromised.

4. Visitors may only visit the residents they were granted permission to visit.

3. Visitor cannot be added to multiple residents' accounts.
4. No inappropriate displays; no drugs, alcohol, lewd behavior, partial or full nudity.
5. Do not allow other residents to speak to visitors.
6. Do not use another residents Homewav account.
7. Do not make/receive phone call after lights out. End call immediately if lights go out.
8. Do not send messages from visitor to other residents' family/friends outside or inside the unit.
9. Account holders need to be visible during calls

## Resident Room Assignment/Living Quarters

1. Beginning immediately with the daily wake-up call, each resident will promptly comply with all daily schedules. This includes both written and/or verbal schedules communicated by staff.
2. Each day, beginning at wake-up call, all residents are to ensure their bed is properly made and assigned room and bathroom is cleaned prior to departing the unit for breakfast.
3. Except for those items specifically approved, each resident must store all personal property items and/or issued state property items inside their designated storage area. Residents will be permitted to display photos on the bulletin boards, provided they do not create a fire hazard. **MAGAZINE CUT OUTS ARE PROHIBITED!**
4. No clothing, linens, blankets, or pillows are to be left on the floor, chairs, or bed of a resident's room. Residents are allowed a maximum of three (3) pairs of shoes: 1 pair of shower shoes, one pair of tennis shoes, and/or one pair of state-issued shoes.
5. Residents are prohibited from gathering and/or visiting on another resident's bed or places not designed for group gatherings.
6. Except when approved by staff, residents may only enter the housing unit to which they are assigned.

   7. Residents are responsible for maintaining a high level of sanitation daily in their assigned living areas, to include recreation areas, bathroom, entire living unit, dining room, and common areas and all outside areas.
8. Each resident is required to participate in the daily cleaning, picking up trash, and other sanitation chores as assigned by staff.
9. Littering is prohibited within the facility, on or about the grounds of the facility, within the community while out on "work assignment," or while participating in an activity sanctioned by the Center.

## Personal Hygiene/Clothing/Bed Linens

1. Residents are always expected to maintain an acceptable level of personal hygiene.
2. Residents are required to shower daily.
   a. Residents will brush their teeth daily.
   b. Clothes will be washed at least twice weekly.
3. Residents must be fully clothed at any time they leave their assigned housing unit. (Red uniform, trousers, tee-shirt, underwear, socks, and shoes). Residents are **NOT** allowed to tuck their pants into their socks. **RESIDENTS ARE ONLY ALLOWED TO WEAR ONE UNIFORM AT A TIME.**
4. On weekends, holidays and after normal working hours or when classes are over, residents while in their assigned housing unit maybe permitted to lower their outer Red uniform to the waist. If a resident does remove his/her outer (Red) shirt, they must be dressed in a tee-shirt.

Disciplinary Report.

5. All food, food trays, utensils, glasses, etc. are to remain in the food service area. Residents are prohibited from removing these items from the dining room.
6. Residents, upon finishing their meal, are responsible for cleaning their respective eating area, properly disposing of any trash/uneaten food in the designated trash containers and returning their food tray and utensils to the turn-in area.
7. Residents on medically prescribed diet are responsible for notifying the kitchen staff member when they come through the serving line to receive their diet tray.

## Safety and Security

### Fire/Safety

Each living area is equipped with an evacuation plan. It is your duty to become familiar with the evacuation plan.

### Count

For count to go as quickly as possible, you are expected to cooperate. No movement is allowed during count time. Whenever count time is called, you are to go to the foot of your assigned rack and not move until the officer directs otherwise. If you are in your living quarters or work area, remain there unless directed otherwise by staff. Failure to cooperate will result in disciplinary action.

### Searches/Shake Downs

For everyone's protection, you, your personal property, and your living quarters can be searched at any time. You do not have to be present during property or living quarter searches. You should not "hold" an item for another resident, nor "pass" an item for another resident as you are responsible for any item(s) found on you or in your area.

1. Residents are required to fully comply with all posted safety regulations, written and/or verbal directions, communicated by staff.
2. Residents are required to participate and fully comply with all emergency drills.
3. Residents are responsible for and encouraged to report any safety defects, hazards, or threats.
4. Residents must not tamper with any safety equipment, fire extinguishers, fire exit doors, etc.
5. Residents are required to maintain their living quarters in a safe manner, free of any fire hazards.
6. Each resident must report any intentions of an escape attempt.
7. Residents are prohibited from making self- repairs to damaged or non-working equipment within their assigned living area. Residents will not adjust any heating or cooling valves in the ceiling.
8. Only authorized residents (assigned to maintenance) may check out and use tools or make repairs in the Center.
9. Residents defacing, damaging, destroying, or stealing Center property, will be subject to disciplinary action and shall be financially responsible for the replacement or repair of damaged/destroyed items.
10. Residents are strictly prohibited from possessing or handling any Center key ring.
11. Keys found to be in a resident's possession or in their control (except for keys issued to maintenance workers for assigned toolboxes) are contraband and will be confiscated. Residents will also receive a disciplinary violation if found in possession for any key(s).

3. Residents are prohibited from receiving any of the following items, in their personal mail.
   a. Stamped envelopes
   b. Postage stamps
   c. U.S. Currency
   d. Games
   e. Tobacco products
   f. Personal checks
   g. Writing/drawing material
   h. Video/audio tapes
   i. Food items
   j. Personal clothing items
   k. Unapproved correspondence from a resident/inmate at another facility. Correspondence with anyone who is incarcerated in a correctional facility or a county jail is limited to immediate family members ONLY. You will have to put in a request to the Warden for approval / disapproval before you can write. The relationship must be verified.
      RESIDENTS are NOT to correspond with ex-residents or with the staff at the OMEGA CENTER.
   l. Nude or obscene photographs
   m. Books coming from other than publisher or bookstores.
   n. Magazines
   o. Polaroid pictures
   p. Newspaper clippings, newspapers, stickers, metal in cards, cards larger than a 5x7, phone cards, internet / email printouts, lottery or Powerball tickets). The letter is returned at the resident's expense.
   q. All other items not specifically approved by designated Center staff.

4. Residents are only allowed "Only 5" photos no larger than 5x7. WHILE YOU ARE IN THE OMEGA CENTER. Printed pictures on paper also count toward your 5 photos. NOTE: There cannot be any inappropriate photo's (i.e. nudity, gang signs, alcohol in the background, etc.) or the letter will be sent back in its' entirety.

5. Privileged Correspondence (Legal Mail): Correspondence with persons or organizations as specified below shall be considered privileged correspondence as long as the individual(s) are acting in their official capacity and the mail is properly marked.
   a. Offices of Federal, State, and local courts
   b. Any Federal or State Official
   c. Any administrator of the Arkansas Division of Community Correction
   d. Any member of the Post Prison Transfer Board
   e. Any member of the Board of Correction and Community Correction
   f. Resident's Attorney
   g. Members of the media, including print, radio, and television
   h. Compliance Attorney
   i. Mail from the above will be opened and inspected for contraband "only" in the presence of the resident concerned. Mail opened and inspected under these circumstances will not be read or censored but may be rejected in its entirety if it is found to contain contraband.

6. Package authorization:
   Any resident requesting to receive personal property items from family or other individual, must complete a Resident Request Form, and receive approval for the items through the

4. Approach the window when Staff calls your name. Commissary sales schedule varies with daily activities and other issues that arise each day.
5. Any questions should be addressed by Resident Request Form. Do not go to the window with questions during sales.
6. Resident Money inquiries should be sent to staff in accounting.
7. All residents in the commissary line will be courteous and respectful and follow all DCC rules.
8. New intake residents are not allowed commissary until they are assigned to a barracks.
9. Resident's allowable spending limits can be affected or changed by disciplinary or therapeutic recommendations according to DCC policy.
10. Items sold in commissary may be purchased in limited quantities. A partial list is available at the commissary. Request further information from commissary staff.
11. Resident signs a sales receipt at time of purchase accepting the sale as final. It is the resident's responsibility to ensure that all items purchased on his receipt are in his bag. After signing the receipt and leaving the sales window, the transaction is complete.
12. When rules are not followed, the DCC staff has the right to refuse the purchase of any individual, until the situation is resolved and a staff booking ticket may be issued.
13. Each resident using the commissary must be wearing their resident ID badge. Failure to wear your ID badge will result in the resident not being allowed to make purchases.
14. It is the resident's responsibility to know their LOP (Loss of Privileges) status if placed on LOP for rule violations.

## Routine Medical Care

Each resident of Arkansas Division of Community Correction (DCC) has a right to receive adequate medical care and treatment as prescribed in the DCC policy and procedures.
Each department of Community Correction Center maintains a Medical Department that is staffed 24 hours a day/ 7 days a week. The following are guidelines that must be followed by the resident:
1. A resident requesting medical services must complete a sick call request form.
2. Sick call (non- emergency) is regularly conducted in accordance with the Center schedule. Sick call request forms are maintained within each housing area and in the medical department.
3. Once completed, the sick call form is to be placed in the designated sick call box. Sick call requests are picked up by medical staff each day.
4. The sick call requests are then reviewed by medical staff. The resident will be scheduled for a sick call appointment at the earliest available time. There is a charge of $3.00 per each request, except for follow up appointments.
5. A list of those residents who are scheduled for a sick call appointment will be posted in each of the housing units. Each resident scheduled for an appointment will also be notified by staff to report to the sick call for his/her appointment. If your name is not on the list, you will not be seen.
6. Upon review of the list, those residents approved must report to the medical department when notified and sign in.
7. Failure to sign-in or show up for sick call will require the resident to re-submit a request.
8. MD (doctors) call is held, as needed, in accordance with the facility schedule.
9. Dental/ Eye clinics are scheduled through the medical department. A sick call request form per the usual procedure is required for these services to be scheduled.
10. Routine pill call is held daily. Pill call schedules will be posted in the housing areas. Do not report to the medical department until called.
11. Prescription medications will only be given out at pill call. Over the counter medications will be provided, if approved by medical staff.

## Religious Services

Religious services for all denominations are held regularly as scheduled by the
Chaplain. Residents' attendance is voluntary. A listing of religious
programs/services is available at the
Chaplain's office and posted in the barracks.

## Residents Access to Staff

Center staff is available 24 hours a day, 7 days a week. Any resident needing assistance
is encouraged to follow the request for interview process. Then address their problems
with staff if the answer could not be obtained. For those residents that need to obtain
specific information, that may not be available to all staff, the resident should complete
a written request
on a "Resident Request for Interview" form. This request should be addressed to the
staff member or department of the Center from whom the information is needed. Once
received the
resident making the request will either be called in for an interview or the resident will
receive the requested information. These interview request forms are available in all
barracks.

## Law Library

A Law Library is available to all residents for the purpose of conducting legal
research and/or preparing legal documents.

1. Law Library- Hours of Operation:
   Library hours are by appointment or as scheduled.
2. Access:
   a. Residents needing to complete legal work/research can do so by submitting
      a "Law Library Request Form" to the Records Office/Learning Center.
   b. The Records Office staff member who oversees the law library will
      schedule the requesting resident a date and time when he may use the
      law library.
3. Reference Materials/Services Available:
   a. A computer, with current legal material(s) is maintained in the law library. To assist
      residents who are either unfamiliar or who have limited knowledge in using the computer,
      will be given assistance by the resident assigned to the library.
   b. An index and copies or current Arkansas Division of Community Correction policies are
      maintained
      in the law library for the resident to review. These policies are not to be removed from the
      law library.
   c. Residents who need to have legal documents notarized must complete a "Request to Staff"
      form, indicating the need to have a document notarized. Once the request is received, the
      notary will notify the resident to report to their office to complete the notary work.
   d. Should a resident require additional copies of any legal materials or other
      documents/forms, the resident will submit a request for their copies through the law
      library. Copies will be limited.

## Central Supply

1. Upon arrival at the Center, each resident will receive an issue of clothing as indicated
   below:

transitional housing facilities; by protecting the eighth amendment right of residents; by providing a safe, humane, and secure environment free from the threat of prohibited sexual acts. DCC has training programs that address prevention, detection, response, investigation, and cooperation in prosecution.

- Residents will undergo on initial mental health screening. If, during this initial screening, a resident is considered to be substantially at risk of being victimized or an aggressor, treatment coordinator and senior residential supervisor will be notified immediately. The resident will be ensured housing and job assignments that minimize opportunities for prohibited sexual acts.
- Residents will not be allowed to engage in sexual acts, consensual or forcible while housed in any Arkansas Division of Community Correction center. Be sure you understand and comply with Cardinal Rules pertaining to sexual abuse, sexual misconduct, and sexual harassment.
- Anyone found to have engaged in prohibited sexual acts will be referred to the Arkansas State Police for criminal investigation.
- If you are a victim, or witness a prohibited sexual act, contact the rape crisis hotline. You must report a prohibited sexual act verbally or in writing. Please alert the officer on duty, the sergeant, the lieutenant, or a counselor immediately. **If you are a victim of a prohibited sexual act, do not shower. Do not drink or brush your teeth if the assault was oral. Do not remove any article of clothing, and do not take any other action that could damage or destroy evidence.** Report the attack immediately.
- Upon notice that an alleged prohibited sexual act occurred, medical staff will be promptly notified. Medical will arrange for the alleged victim to be medically examined. Medical protocol will be followed to include provision for examination, documentation, transportation to the local hospital when appropriate, collection of evidence, testing for sexually transmitted diseases, counseling, as appropriate, follow-up, and mental health assessment.

**PREA CONTACT NUMBERS ARE: *9123 or 1-800-553-3820**

2020

March 2020

COMPLIANCE
GUIDELINES
REGULATIONS
RULES



DIVISION OF
CORRECTION

# Inmate Handbook

## Division of Correction

### Inmate Handbook

ii

1st Printing, December 1971 (Revised)
2nd Printing, July 1972 (Revised)
3rd Printing, November 1972 (Revised)
4th Printing, January 1975 (Revised)
5th Printing, July 1978 (Revised)
6th Printing, May 1981 (Revised)
7th Printing, August 1981 (Revised)
8th Printing, October 1983 (Revised and Recalled)
9th Printing, September 1986 (Revised)
10th Printing, February 1991 (Revised)
11th Printing, February 1994 (Revised)
12th Printing, December 2001 (Revised)
13th Printing, May 2006 (Revised)
14th Printing, January 2007 (Revised)
15th October 2010 (Revised)
16th October 2011 (Revised)
17th October 2012 (Revised)
18th Printing, July 2013 (Updated)
19th Printing, August 2013 (Updated)
20th Printing, June 2015 (Revised)
21st Printing, November 2017 (Revised)
22nd Printing, March 2020 (Revised)

Printed by Arkansas Correctional Industries

Prepared by:
The Research and Planning Division
Tiffanye Compton, Research & Planning Administrator
Darrell McHenry, Research Analyst

Edited by:
Dina Tyler, Director of Communications

hotline and legal calls if needed, otherwise, no telephone use while in the lockdown area of intake. Once you move into the intake step-down barracks, telephone use is allowed.

You will be photographed during intake. If your appearance changes at any time during your incarceration, a new photograph will be taken.

## Inmate Statutory Responsibilities

While in the custody of the Division of Correction, you must follow department policies and all state and federal laws, including the requirement to file income tax returns if you had taxable income during the tax year. If you are unable to file income tax returns, it is your responsibility to ask for assistance. If you receive an income tax refund check, the appropriate tax agency will be contacted for approval before the check is deposited into your account. Other legal obligations do not terminate due to incarceration. You are still required to fulfill certain financial/legal obligations such as child support during incarceration. However, you can petition the court that entered the order and request a modification of the obligation.

## Veterans Benefits/Social Security Income and Tax Refunds

If you are receiving Veterans benefits or Social Security Income, that agency determines whether to continue sending the benefits to you.

## Initial Assignment

After intake, inmates are transferred to a parent unit for their initial assignment. Exceptions for initial assignments may be made for health reasons, security concerns or program assignments. The initial assignment lasts a minimum of 60 days. Behavior, bed space, job availability, health and institutional needs dictate future assignments.

## Transfers

Any inmate may request a transfer to another ADC unit. The request must be in writing and given to your unit warden and/or classification officer and should be placed in the unit mail. The decision to transfer an inmate is based upon available bed space, institutional needs, security level and other factors.

## Classification

Inmates are classified in three ways: custody classification, good-time earning classification and medical classification. Custody classification is the result of scoring established criteria including crime, length of sentence, disciplinary record, prior violence, escape history and various other factors that determine risk to the public and risk within the institution. Custody classification is used

5

---

to determine which facilities an inmate can be assigned.

Good-time classification places inmates in Class I, II, III or IV status. Class I is the highest classification/class status an inmate can obtain and Class IV is the lowest class status. Class promotion is not automatic. It is up to you to earn Class I status and your class can be reduced because of disciplinary problems. Promotions in class status are decided by the Unit Classification Committee, which makes the decisions based on your past and current behavior and recommendations from your work supervisor and/or other staff. The classification committee also makes transfer decisions, housing and work assignment.

Meritorious good time is not a right that inmates are entitled to; it is awarded based on good behavior, outstanding work record and institutional adjustment.

**Class I** - an inmate in class I may receive a total of 30 days reduction of parole/transfer eligibility date for each month served.

**Class II** - an inmate in class II may receive a total of 20 days reduction of parole/transfer eligibility date for each month served. All inmates and parole violators will be placed in Class II status upon their arrival in ADC unless the inmate is being returned as the result of disciplinary action and has been reduced below Class II status. An offender released by the Parole Board may be reduced to this class by the Hearing Judge.

**Class III** - an inmate in class III may receive a total of 10 days reduction of parole/transfer eligibility for each month served.

**Class IV** - inmates in class IV do not receive good time. This class is generally referred to as "flat time" or "day-for-day".

Meritorious good time may be given for being housed in a jail or similar secure facility while awaiting transfer to ADC, unless the sheriff or designee submits written objections to the award based on the prisoner's behavior, discipline and conduct while awaiting transfer.

Healthcare professionals determine medical classifications and restrictions, which are considered in making work assignments.

## Work Assignments

The Unit Classification Committee or Officer will make all work assignments. Programming assignments are considered work assignments. All inmates who are medically able are expected to work and disciplinaries will be written for refusing a work assignment. ADC does not pay wages to inmates, nor does ADC charge for basic hygiene items, meals, laundry services, etc.

6

below these standards, the Chief of Security may order steps to gain your compliance. Failure to abide by grooming standards is grounds for disciplinary action.

**Fire/Safety Evacuation**

Each living area is equipped with an evacuation plan. It is your duty to become familiar with the evacuation plan.

**Count**

For count to go as quickly as possible, you are expected to cooperate. **No** movement is allowed during count time.

Whenever count time is called, an Officer will explain what to do. If you are in your living quarters or work area, remain there unless directed otherwise by staff. Failure to cooperate will result in disciplinary action.

**Searches/Shake Downs**

For everyone's protection, you, your personal property and your living quarters can be searched at any time. You do not have to be present during property or living quarter searches. You should not "hold" an item for another inmate, nor "pass" an item for another inmate as you are responsible for any item(s) found on you or in your area.

**Property**

**Property is defined as:**

*1. Personal Property* - items that are owned by you and are authorized to be retained on your person or in your living or storage area.

*2. State Issued Property* - items that are issued to you by the institution and may be retained within a reasonable amount.

**Property Transfer**

If you are transferred to another unit, your property will also be transferred. If there are excessive items or items not allowed at that unit, you may send the items home at your expense, have someone pick up the items at the unit, or authorize the destruction of the items.

When an emergency situation is declared, the department is not responsible for any property that is lost, stolen, damaged, consumed or discarded.

**Contraband**

Any article not authorized nor issued to you as personal property or state property, nor purchased by you from the commissary, is considered contraband. Articles in excess of established limits, articles used for unauthorized purposes and/or articles in your possession in an

9

unauthorized area are considered contraband. Any item altered from its original state is also considered contraband. Possessing contraband is a rule violation and will result in disciplinary action.

**Enemy Alert Lists**

If you request that another inmate be placed on your enemy alert list, the Chief of Security and the Warden will determine whether the alert is warranted. Staff cannot be placed on an inmate's enemy alert list, but a staff separation can be entered if determined necessary by the ADC.

**Inmate Lockers/Locks**

When lockers are necessary, the ADC may provide them to you, however, at some facilities we may not. If lockers are provided, locks are available in the commissary. The lock's combination must be provided to the security office. The administration reserves the right to maintain access to all lockers. If the combination is not made available to the administration, entry will be made at your expense.

**Prison Rape Elimination Act**

On Sept. 4, 2003, the Federal Prison Rape Elimination Act (PREA) was signed into law. It applies to all confinement institutions housing adult and juvenile offenders. **The Arkansas Division of Corrections has a "zero-tolerance" policy regarding the sexual abuse of inmates by staff or other inmates.** Speak up. Do not be a silent victim of sexual assault or rape. Sexual assault is not part of your sentence! If you have been sexually assaulted, feel, you are being pressured into a sexual relationship, or feel you are being sexually harassed, you can tell any staff, write a letter to staff, file a grievance, and/or call the hotline on the Inmate Phone System, *87026? and report this immediately. All calls will be reviewed. If you would like to report the abuse or harassment to an outside agency, you may call the Arkansas State Police Crime Hotline, toll-free on the inmate phone system. The number to call is *9123#.

*Investigating allegation of sexual abuse*

Report the incident to staff immediately or either the Agency PREA hotline at *87026? or the ASP Crime Hotline at *9123#. An immediate referral will be made to Health Services for a physical examination and completion of a rape kit test. (Do not shower or clean yourself after the incident because it will interfere with the rape test results). A timely and thorough investigation will be conducted. Evidence will be collected and stored. To protect the victim, rape complaints will be restricted to those individuals who investigate, provide assistance, or prosecute. The victim will be placed in a safe place where he/she is not subject to retaliation. The unit's PREA Response Team will be notified and will assist the inmate. Statements will be taken from witnesses, and findings will be documented. The case may result in discipline and/or be referred

10

13

## Telephone Use

During set hours, you are allowed to make collect calls to people on your pre-approved telephone list. *Three-way calling and call forwarding is not allowed. All calls except those to an attorney or a known outside rape counseling service, will be recorded and may be monitored.*

## Emergency Messages

The Chaplain or mental health office will notify you about family emergencies.

## Personal Clothing

The ADC provides uniforms, undergarments, a pair of shoes, soap, toothbrush, toothpaste, safety razor with blade, bath towels and feminine hygiene items. Seasonal items *may* also be provided such as a toboggan cap, jacket or coat and thermal underwear.

## Jewelry

Personal jewelry allowed includes one wristwatch, one plain metal ring or wedding band and one religious medal or emblem worn on your ID chain. The religious medal/emblem must be approved by the chaplain. The value of each item cannot exceed $50. A wedding band can have a higher value, but you must sign a waiver of liability.

## Photographs

You may have up to five personal photographs that are not nude or sexually suggestive. Photographs cannot contain subject matter that is disruptive in nature or would threaten security or the good order of the institution. Digital pictures or images generated by a computer and xerox copies are considered to be photographs. Photographs may not be any larger than 8 1/2 X 11 inches. Such photographs may contain either single or multiple digital images/pictures. However, when digital images/pictures are cut from an 8 1/2 X 11-inch sheet, it will no longer be considered as one. Each image cut from the sheet will be counted as one of the inmate's five authorized photographs.

## Major Disciplinary Process

The major disciplinary form will be used in filing major disciplinary reports against you. This form will inform you in writing of the details of the rule infractions.

1. You will receive a copy of the major disciplinary report at least 24 hours prior to the major disciplinary court hearing.

2. At the time you are served the disciplinary report, if you want to call witnesses, this is the time to do it by giving the notifying officer the names of the individuals you wish to call. There may be a limit on

14

how many witnesses you can call. The Chief Security Officer at the unit determines this limit. **You will not be allowed to submit witness statements that you have gathered to the hearing officer.**

3. Unless your disciplinary is extended, it will expire after seven (7) business days (excluding weekends and holidays) from the date of the incident, the discovery of the incident (in cases where the incident was concealed from the staff), or the date the investigation has concluded. If your disciplinary is extended, you will be provided a copy of the extension form.

4. You will be allowed to be present at your hearing, but you will not be forced to attend. You may waive your appearance by signing a waiver form or failing to attend when disciplinary court is called. You cannot appeal if you waive your hearing.

5. The hearing will be conducted as follows:

a. When the hearing officer is ready to hear your case, you will be called into the room, and the hearing officer will identify any people present at the hearing for the record.

b. You will be informed of the specific charges against you and the possible consequences of a finding of guilt.

c. The hearing officer will read the disciplinary report to you and ask for your plea to each charge. There are only two acceptable pleas, "guilty" or "not guilty." Any plea other than these, or refusing to enter a plea, will be considered as a plea of not guilty.

d. You will be given an opportunity to make a statement on your behalf and present documentary evidence (other than witness statements)

e. You will then be required to leave the room while the hearing officer reads any confidential statements into the record, and considers the evidence.

f. After the hearing officer has reached a verdict, you will be called back into the hearing room and informed of his/her findings and the reason for them.

g. You will be advised of your right to appeal any or all guilty decisions of the hearing officer.

h. At this point, your hearing will end, and if you were found guilty, this will mark the beginning of any punishment assessed.

17

to the Warden/Center Supervisor of the unit/center where the incident occurred. You must submit this appeal in writing within 15 business days of the hearing.

2. The Warden/Center Supervisor has 30 business days from receipt of your appeal to respond. If you are serving punitive time as a result of the disciplinary and marked the box in the upper right corner of the form with an "X", then the Warden/Center Supervisor should respond in 10 business days, if possible.

3. If you are not satisfied with the Warden's/Center Supervisor's response, you have 15 business days to appeal to the Disciplinary Hearing Administrator in the Central Administrative Office. To appeal to the Hearing Administrator, you must submit the same disciplinary appeal form that was submitted to the Warden. Be sure to identify the disciplinary by date, time and charging person. Do not send your copy of your disciplinary report, hearing action sheets, or additional pages because copies of these are filed in the hearing administrator's office and are reviewed with your appeal. Any documentation submitted will not be returned.

4. The Disciplinary Hearing Administrator has thirty (30) business days from receipt of your appeal to respond.

5. If you disagree with the Hearing Administrator's response, you have 15 business days to appeal to the Director of the Department, who has thirty (30) business days to respond and whose decision will be the final step in the appeal process. Again, you submit the same disciplinary appeal form that was submitted to the Warden and the Disciplinary Hearing Officer.

6. A list of Major Disciplinary violations will be displayed for each inmate on the Department's website pursuant to a 2015 state law.

## Minor Disciplinary Process

**The minor disciplinary report is used to initiate the minor disciplinary process. The full due process considerations involved in the major disciplinary process do not apply to minor disciplinaries.**

1. The Minor Disciplinary Hearing Officer must hear the disciplinary within seven (7) business days of the incident, discovery of incident, or conclusion of an investigation.

2. You will be allowed to be present and to make a statement on your behalf.

3. After hearing the charges against you and your defense, the Minor

18

Disciplinary Hearing Officer will render his/her decision as to guilt or innocence and the appropriate action to be taken.

4. The findings of the Minor Disciplinary Hearing Officer may be appealed to the Chief of Security and his/her decision is final.

*Minor Disciplinary Sanctions*
The Minor Disciplinary Committee may take any or all of the following actions:

1. Warning, reprimand or excuse the inmate.
2. Revoke privileges for up to twenty (20) days.
3. Extra duty.

**Actions taken by the Minor Disciplinary Hearing Officer must not exceed 20 days.**

### Behavior Rules and Regulations
The same rule violations apply to both major and minor disciplinaries. The following rules and regulations shall govern your behavior at all units and are found in the disciplinary policy in the unit library. Please note that some numbers are not in order as categories were combined, but historical information will be maintained. Numbers reserved for historical purposes are not listed in this Handbook. The **"bold"** words below indicate what should display on the ADC website (2015 state law requires a list and the dates) for major rule violations. In some instances it will be the category, but if words in the **specific rule violation are bolded, those words will display on the website.**



21

## BATTERY CATEGORY

| TYPE | PENALTY CLASS |
|---|---|
| 04-4. **Battery**—Use of physical force upon staff. | A |
| 04-5. **Aggravated Battery** - Use of a weapon in battery upon another person (not an inmate). This Rule violation may result in loss of all good time and the loss for one (1) calendar year of the privilege to purchase or possess any item which was used as a weapon. | A |
| 04-8. **Battery** - Use of physical force upon an inmate. | A |
| 04-17. **Throwing or attempt to throw substances**, known or unknown, toward or upon another person. Rule violation may result in loss of all good time. | A |
| 04-18. **Aggravated Battery upon inmate** - Use of a weapon in a battery upon another inmate. Rule violation may result in the loss of all good time. | A |

## ASSAULT CATEGORY

| TYPE | PENALTY CLASS |
|---|---|
| 05-3. **Assault** - Any **threat(s) to inflict injury** upon another, directly or indirectly, verbally or in writing. | A |
| 05-4. Making **sexual threat(s)** to another person, directly or indirectly, verbally or in writing. | A |

## THEFT, DESTRUCTION OF PROPERTY OR EXTORTION CATEGORY

| TYPE | PENALTY CLASS |
|---|---|
| 06-1. **Demanding/receiving money or favors** or anything of value in return for an offer/promise of protection from others, or to keep information secret. | A |
| 07-1. **Unauthorized use of state property/supplies.** | B |
| 07-4. **Theft or possession of stolen property.** | A |
| 08-4. **Destruction** or intentional misplacement **of property** of another or the Department. | B |
| 08-6. **Adulteration of any food(s) or drink(s)** with intent to harm others. Rule violation may result in the loss of all good time. | A |
| 08-7. **Setting a fire** or destruction **or tampering with fire** detection or suppression device. | A |

22

## POSSESSION/MANUFACTURE OF CONTRABAND CATEGORY

| TYPE | PENALTY CLASS |
|---|---|
| 09-1. Possession/introduction of any firearm, ammunition, weapon, fireworks, explosive, unauthorized combustible substance or unauthorized tool. Rule violation may result in lost of all good time. | A |
| 09-3. Possession/introduction/manufacture of any drug, narcotic intoxicant, tobacco, chemical, or drug paraphernalia not prescribed by medical staff. | A |
| 09-4. Possession or movement of money or currency, unless specifically authorized. | A |
| 09-5. Possession/introduction of clothing or property not issued to inmate nor authorized by the center/unit | C |
| 09-9. Counterfeiting, forging or unauthorized possession/introduction of any document, article of identification, money, security or official paper. | A |
| 09-14. Possession/introduction/use of unauthorized electronic device(s), including flash drive, MP player, DVD player, etc. Rule violation may result in loss of all good time. | A |
| 09-15. Possession/introduction/use of a cell phone or any cell phone component (e.g. sims card, charger, battery, etc.) or an unauthorized messaging device. Rule violation may result in the loss of all good time and may result in the loss of Inmate Telephone System privileges for one (1) year. | A |
| 09-16. Use of internet or social media. | A |
| 09-17. Preparing, conducting or participating in a gambling operation. | B |

## SEXUAL ACTIVITY CATEGORY

| TYPE | PENALTY CLASS |
|---|---|
| 10-1. Engaging in sexual activity with another consenting person. | A |
| 10-2. Making sexual proposals to another person (PREA). | A |
| 10-3. Indecent exposure; may result in a referral for criminal prosecution. | A |
| 10-4. Bestiality. | A |

**Step-Down Program** - a system of review that establishes criteria to prepare an inmate for transition from restrictive housing to general population or the community. A classification committee made up of a multidisciplinary team (medical, mental health, security and others determined by the Warden) will determine which individual inmates enter the program.

**Reentry Plan** - a pre-release assessment and plan that includes, at a minimum, a review of parole stipulations and program referrals, transportation to the inmate's closest commercial pick-up point, information on community services available in the area and information on how to reinstate voting rights upon discharge of their sentence.

**Detainers**

A detainer is a hold placed on an inmate by a law enforcement agency that has charges pending against the inmate.

**Interstate Compact**

Under the Interstate Compact agreement, an inmate can serve his/her Arkansas sentence in another state's correctional system but only under certain circumstances and only if both states agree.

Interstate Compact Inmates that are housed in the ADC for another state, cannot be awarded Class IA, IB nor ID or otherwise a class status that allows the inmate to work outside the confinements of the fence without armed supervision.

**Medical Services**

**Health Services**

If you have a medical or dental emergency, inform a correctional officer who will notify the Medical Department immediately for evaluation. If the problem is not an emergency, then a Health Services Sick Call request form must be submitted, which will be reviewed by the Medical Department within 24 hours, and an examination will be scheduled. ADC charges inmates a $3 co-pay fee for any inmate-initiated request for medical or dental services. A $3 fee is also charged for initial contact with health care services due to a fight, sports injury, or self-inflicted injury not associated with mental illness. No fee is charged for diagnosis and treatment of communicable disease, chronic care or other staff-initiated care, including follow-up and referral visits. See the Co-Pay policy for more details; no inmate will be denied medical care due to an inability to pay.

**Dental Services**

In addition to dental emergencies and routine and necessary examinations, treatment and cleanings are available. Dental prosthetics are provided if required for chewing food but will not be provided for cosmetic effect.

**Eye Examinations**

If you are having vision difficulty, submit a request for an examination to the Medical Department. If appropriate and needed, an optometrist will exam your eyes, and standard glasses will be provided if needed. You may be re-examined as provided in policy.

**Program Services**

Inmates who would like to participate in any program should complete an inmate request form to the Program Coordinator and send the request via truck mail to that Program Coordinator.

**Inmate Tablet Program**

The Tablet Program is a low-cost monthly subscription service that gives friends and family members the opportunity to lease a tablet device for their loved ones serving time in prison. Inmates must meet eligibility requirements and follow established rules. The tablets allow incarcerated individuals the capability to listen to music, read books, play games and search for jobs. Inmates can also utilize the tablet to place phone calls (subject to all rules pertaining to the use of the inmate phone system).

**Sex Offenders Treatment**

The Reduction of Sexual Victimization Program (RSVP) is a treatment program for male inmates and Sex Offender Treatment (SOFT) is the treatment program for female sex offenders. Both focus on controlling compulsive sexual behaviors. Participation in the program is voluntary, but the Parole Board can require completion as a condition of early release.

**Act 309 Program**

Under the Act 309 Program, inmates who qualify may be assigned to county or city jail facilities. Inmates must be Class I eligible, have served a minimum of 6 months since admission to a parent unit with the ADC, be disciplinary free for 90 days, and be capable of abiding by the rules and regulations of the program. Inmates cannot have any undisposed felony detainers filed against them unless approved for transfer by the agency filing the detainer, and they must be within 45 months from their parole or transfer eligibility date. Any eligible inmate must exhibit a current medical classification commensurate with

used to waive any documentation requirements for non-United States citizens. This also does not apply to a person with an expired driver's license.

## Work Release

In the Work Release Program, inmates are housed in correctional facilities and may be employed in the community after competing their assignment to Regional Maintenance. From the wages they earn, the inmates partially reimburse the state for their care and custody. Inmates who have dependents must remit one-third of their net income or the amount that may be required by court order. The inmate will normally be allowed to spend up to an amount equal to the approved weekly commissary draw. The remaining balance will be deposited in the inmate's ADC account. Any disbursements out of this account must be approved by the Warden/Center Supervisor. The inmate may access the account upon his or her release from custody. Work Release inmates must be Class I-A eligible, must have a parole eligibility release date within 42 months or shorter as determined by the Director, have no major disciplinary infractions for a period of not less than 3 months immediately prior to application, must exhibit a current medical classification commensurate with expected work assignment, etc. Some inmates are ineligible for the program due to their criminal or disciplinary history.

## Education

### Academic

At the beginning of the 1997-1998 school year, academic education became mandatory for all inmates who do not have a high school diploma or General Education Development (GED) certificate. A full range of academic programs is available at most units, including special education programs for inmates who qualify. Summer school is provided at some units, and homebound educational services may be offered for inmates in restrictive housing. Inmates progress at their own pace and work toward their GED certificate. College courses are offered at some units.

### Technical Certificate Courses

Vocational courses available to inmates include Building and Grounds Maintenance/Facilities, Combination Welding, Computerized Account-ing, Computer Application Technology, Cosmetology, Finish Carpentry & Cabinetry, Culinary Arts/Food Services, HVAC & Refrigeration, Horticulture, Landscape Design & Construction, Office Technology, Plumbing, Residential Carpentry, Residential Electricity, Small Engine Repair, Graphic Arts, Furniture, Upholstery, Welding & Fabrication and Workforce Logistics.

## Prison Industry Enhancement Certification Program

A PIECP worker is an inmate who provides labor for a BJA Prison Industries Enhancement Certification Program (PIECP). He or she benefits from PIECP by receiving an opportunity for training and work experience. The inmate worker must voluntarily agree to participate in PIECP and meet eligibility requirements. ADC retains an amount of the inmate's earnings for operational fees. Earnings must also go into a savings account, to the Arkansas Crime Victims Reparation Fund, to the inmate's dependents and court-ordered child support, where applicable.

## Religious Services

### Religious Activities

Chaplains and volunteers provide religious services, pastoral counseling, study groups, revivals and other special events.

### Religious medals

One religious medal or emblem may be worn on an ID chain. A separate chain is not allowed. The religious medal or emblem cannot be larger than one and a half inches in length or width and no thicker than 1/8 of an inch. The medal/emblem must be received and approved through the chaplain's office. Approved medals/emblems must be listed on your inventory/property list, and if not, you may be disciplined for poss-ession of contraband.

## Mail Policy/Packages

All of your incoming and outgoing mail may be read, except for privileged correspondence, which will be opened in your presence and inspected for contraband. This correspondence includes letters from attorneys; federal, state, and local court officials; any administrator of the Department of Correction, Parole Board, Board of Corrections and the media. If properly marked as privileged correspondence, it will be opened in front of you and inspected for contraband.

Outgoing mail must have your full name, return address, including your ADC number. Incoming mail and packages should have your full name and ADC number and you are limited to receiving only a black & white photocopy of the envelop and three pages.

Letters must be written in the English language unless there is approval from the Warden/Center Supervisor to communicate with family in another language.

The Department of Correction does not accept postage due mail or packages. Postage payment must be made in advance. Since opened mail

29

30

33

for attorneys of record and clergy. Special visits have to be arranged in advance, preferably 24 hours prior to the visit.

## Visitation Rules

Four visitors are allowed during any one visit, including children. However, a spouse and all children, regardless of the number, may visit at the same time.

## Non-Contact Visitation

Non-contact visitation, where a glass divider separates the inmate and visitor, is used at the discretion of the Warden for inmates in restrictive housing. Non-contact is the only form of visitation allowed for inmates assigned to the Varner Supermax Program.

## Visitation on Restrictive Housing

Inmates on punitive status may be allowed visitation privileges unless there are substantial reasons for withholding such privileges. Visits will be conducted for two hours, once a month and scheduled at least 24 hours in advance. The Warden or designee must approve all such visits and will consider, among other factors, the following:

   a. Nature of rule violation.

   b. Further rule violations while housed on punitive status.

   c. Satisfactory cell inspection reports.

## Special Status/Assignment

Inmates on special status/assignment (such as Restrictive Housing, Investigative Status and Mental Health) may be allowed to receive a visit, consistent with good security, as designated by the Warden/ Center Supervisor or Assistant Warden. Death Row visits are held in accordance with the appropriate administrative directive.

## Furloughs

## Emergency Furloughs

Emergency furloughs **may** be granted when there is a critical illness or death in immediate family on the inmate's approved visitation list to inmates eligible for meritorious furloughs.

## Meritorious Furloughs

A meritorious furlough **may be** granted if you have maintained a status of Class I-A or I-B for one year, have not been sentenced to death or life without parole along with other criteria. The Unit Classification Committee must approve all meritorious furloughs.

Under state law, meritorious furloughs cannot be granted to inmates

34

sentenced for capital murder, murder in the first degree, kidnapping, stalking, rape, any other sexual offense or any offense concerning exploitation of children or the use of children in sexual performances. The sheriff of the county where an inmate will be staying during the furlough must be notified.

## Work Release Furloughs

Work Release furloughs may be granted for one weekend a month to inmates participating in a Work Release program.

## Act 309 Furloughs

If approved, Act 309 furloughs are to be taken on the weekend, not to exceed 48 hours and no more often than every 90 days.

No furlough will be granted during a holiday weekend.

## Commissary

Each unit has a commissary or some way to purchase items that are not normally provided by the ADC. The Board of Corrections sets the weekly limit of money allowed to be spent. A list of available items and purchase prices is provided at each commissary. Prices are subject to change.

## Indigent Program

Criteria is as follows:

1. Be at the unit for 30 days.

2. Have less than $10 on your account and have received less than $10 on your account in the immediate preceding 30 days.

Indigent items are provided every 30 days. Requests will be filled on the last day of the month. If the inmate is eligible and has funds on account, entitlement will be reduced by the amount of funds.

The system **will not** let you have an item before the allotted time frame, not even one day early. The system cannot be backdated for unavailable items. Items will be issued to eligible inmates in the same manner as the unit's procedures for commissary. Eligible indigent inmates will shop on routine schedules with non-indigent inmates.

Indigent commissary lists will be filled according to availability and in the order they are received. Any outside money that the inmate receives while in the indigent program can go to pay for filing fees, legal postage or any other outstanding costs.

37

of Sexual Victimization Program or the Sex Offender Female Treatment Program before being released on parole. Because programs have waiting lists, you should request a program and not wait to be stipulated or you can delay your release.

If the conditions of release are not met or if you fail to follow the reporting schedule, parole can be revoked and you can be sent back to prison.

## Parole Eligibility/Transfer Eligibility Dates

The records offices of the various units compute parole eligibility or transfer eligibility dates. All inmates, except those sentenced to life, life without parole, death or certain repeat offenders, can be eligible for parole/transfer at some point. Eligibility dates will depend on state laws concerning the crime, the sentence and good time. The eligibility date can change because of disciplinary action or additional convictions.

## Supervision of Parolees

The Division of Correction does not supervise parolees. Supervision of parolees is provided by the Division of Community Correction.

## Pardons & Commutations

Pardons and Commutations are granted by the Governor and are used to restore rights that may have been lost because of a criminal conviction. An application for pardon can be obtained from an Institutional Release Officer (IRO).

## Executive Clemency

You may also apply to the Governor for a commutation, which can reduce the length of your sentence. Eligibility criteria for the various forms of executive clemency are listed on the application that you may request from your Unit IRO. Once an application is submitted for screening and/or consideration, the process cannot be interrupted. The following are examples of grounds upon which an application may be filed: (1) to correct an injustice which may have occurred during the person's trial; (2) life threatening medical condition (also see Ark. Code Ann. §12-29-404) (3) to reduce an excessive sentence); or (4) the person's institutional adjustment has been exemplary, and the ends of justice have been achieved. Any person who files for clemency and is denied by the Governor shall not be eligible to reapply for a period of four (4) years from the date of application. If the applicant is serving a life sentence without parole for a crime other than Capital Murder, they will not be eligible to reapply for six (6) years from the date of denial. If an applicant is serving a sentence of life without parole for a

38

conviction of Capital Murder, they will not be eligible to reapply for eight (8) years from the date of denial. However, a person who is denied by the Governor, can petition the Board for a waiver of the waiting period.

## Emergency Powers Act (EPA)

The Emergency Powers Act gives the Board of Corrections the authority to declare a prison-overcrowding emergency and to move parole/transfer eligibility dates forward by up to 90 days for eligible inmates. Even if the EPA is in effect, the Parole Board must still approve inmates for parole, and an approved parole plan must exist prior to release.

Under an expanded version of the EPA, inmates convicted of a nonviolent offense (except for those sentenced under Act 1326), who are Class I or Class II, have been in the ADC system for at least six months, and do not have violent disciplinary histories may be eligible for release up to one year early.

## Legal Assistance

There are two licensed Arkansas attorneys to assist with legal advice and explanations of court documents. The attorneys *cannot* represent inmates in lawsuits against the Department of Corrections or its employees or on matters concerning criminal convictions. However, they can represent inmates in certain divorce and Department of Human Services matters.

## Supermax

All inmates transferred to the Varner Supermax Program will have a due process hearing. This hearing requires a 24-hour advance notice to the inmate. The sending unit may recommend that an inmate be transferred to the Supermax for any of the following:
1. Escape from inside a secure facility.
2. Assault on staff resulting in injury.
3. Assault on another inmate with a weapon.
4. Disciplinary conviction for a violent felony.
5. Other reasons that the Warden believes may constitute a serious threat to the security and good order of the institution.

## Transfer Appeals

The committee's decision to transfer an inmate to the Supermax Program may be appealed to the Chief Deputy Director/Deputy Director

## Omega Center
## **REQUEST FOR INTERVIEW**

**Date:** 8-26-20                    **Time:** 7:30 A.M.

**TO:** Ms. Hilliard                    **OFFICE:** Mail

**FROM:** Alvin King                    **ADC#:** 659717
(Resident's Name)

**JOB ASSIGNMENT:** _____            **SUPERVISOR:** _____

**WORKING HOURS:** ____ TO ____         **BKS:** Admin. C4   Seg

Give a detailed reason for the interview:

Ms. Hilliard, with all due respect mam, Mr. White does not want mail
leaving out of here registered because he or no one else can stop it
or put a hold on it. As I told you in the previous request, I sent a Judicial
Review from DCC4 next door to Hot Springs County Circuit Court registered.
I have also myself been summoned to small claims court via

Can this be handled at the Residential Supervisor's level or Counselors Level: YES ___ NO ___ If No, Why?

registered mail. I apologize if you should feel that my correspondence
with you has been at all improper because that was not my intention.

*Alvin King*
**Resident's Signature**                    **Staff Signature**

**ACTION TAKEN**
Mr. White, said it can't go out as
registered mail then I can't send it
out registered.

_____
Staff Signature                    8-31-20
                                    Date

NOTE: ALL REQUESTS FOR INTERVIEW SLIPS MUST BE DROPPED IN THE REQUEST FOR

**Arkansas Community Correction**

**COMPLAINT FORM FOR RESIDENTS**

Resident Name: _Alvin King_

ACC #: _659717_

Date: _8-28-20_

Unit Assignment: _Omega TPU_

Job Assignment:

A resident must first attempt to informally resolve complaints, grievances, problems, or incidents by submitting a "Complaint Form for Residents" or discussing the matter with an appropriate person such as a counselor, the Residential Supervisor assigned to his/her housing area, or the Shift Supervisor on duty. Note, this step is NOT required for emergency grievances and allegations of sexual abuse; the Resident Grievance and Appeal Process policy addresses these situations.

**Describe the Problem. If appropriate include a recommended solution:**

On or about 8-25-20, I sent a request to Ms. Hilliard inquiring about the price of sending some legal mail registered. She responded by saying that I couldn't send legal mail. I sent her another request the next day asking her, "what did she mean I couldn't send legal mail registered" and told her that I sent a Judical Review from ORCU next door to the Hot Springs County Circuit Court, I got a receit back from the

Signature of Resident: _Alvin King_    registered

Date: _8-28-20_

**RESPONSE BY STAFF OR MEDICAL**

Date Received: ____    Date Resident was Seen: ____    Printed Name of Staff / Medical: ____

Response / Action Taken:

prison mail room showing I paid for it and a receit from the post office when the circuit clerk picked it up. She said she spoke with deputy white and that's what he told her.

**RESIDENT'S ASSESSMENT OF RESPONSE**

[ ] My complaint has been resolved and/or, I no longer want to pursue this matter

[✓] My complaint has NOT been resolved and I want to pursue this matter (options include submitting a grievance)

Resident's Signature: _Alvin King_

Date Signed: _9-1-20_

Staff/Medical: Send response to the ARO within 3 business days
Copy: Resident

Deputy White Told me he could not send legal mail resistered mail.
C. Hilliard 9-1-20

AD 15 08

## Omega Center
## REQUEST FOR INTERVIEW

Date: 8-25-20

Time: 6:00 A.M.

TO: Mr. Hilliard

OFFICE: Mail

FROM: Alvin King
(Resident's Name)

ADC#: 659717

JOB ASSIGNMENT:

SUPERVISOR:

WORKING HOURS:          TO

BKS: Admin, L4   S-eg

Give a detailed reason for the interview:

What do you mean I can't send legal mail registered?
I sent a Judical Reveiw from The Ouchitaa Correctional
Unit next door to the Hot Springs County Circuit Court
registered. Got a receit back from the prison showing I paid for it
and a receit back from the post office showing the clerk picked
it up.

Can this be handled at the Residential Supervisor's level or Counselors Level: YES ___ NO ___ If No, Why?

Resident's Signature

Staff Signature

ACTION TAKEN

I spoke to Depaty White and that
is what he told me.

Staff Signature

Date

**Omega Center**
## REQUEST FOR INTERVIEW

**Date:** 8-22-20

**Time:** 6:00 p.m.

**TO:** Ms. Hilliard

**OFFICE:** Mail

**FROM:** Alvin King
(Resident's Name)

**ADC#:** 659717

**JOB ASSIGNMENT:** _____

**SUPERVISOR:** _____

**WORKING HOURS:** _____ **TO** _____

**BKS:** Admin. 24     InTK

**Give a detailed reason for the interview:**

Ms. Hilliard, how much will it cost me to send some
legal mail registered, where I get a receipt showing
that the addressed party received or picked up the
mail?

Can this be handled at the Residential Supervisor's level or Counselors Level: YES ___ NO ___ If No, Why?

_Resident's Signature_

**ACTION TAKEN**

**Staff Signature**

Can't send legal mail by registered
mail.

_____

_Staff Signature_

Hilliard     8-24-20
Date

NOTE:  ALL REQUESTS FOR INTERVIEW SLIPS MUST BE DROPPED IN THE REQUEST FOR
       INTERVIEW BOX.



Alvin W. King #657717
ORCU
P.O. Box 1630
Malvern, AR 72104

"Legal
Mail"

"Legal
Mail"

Received WD/AR

NOV 12 2020

U.S. Clerk's Office

Sherry Gilbertson
Pro Se Law Clerk
35 East Mountain St., Suite 510
Fayetteville, AR 72701

CERTIFIED MAIL

7019 0160 0001 1178 8828

ORCU
UNIT

NEOPOST
11/09/2020
US POSTAGE